## SHELL OIL COMPANY *v.* SUPERVISOR OF ASSESSMENTS OF PRINCE GEORGE'S COUNTY

[No. 246, September Term, 1974.]

*Decided September 9, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Roger D. Redden,* with whom were *Francis X. Wright* and *Wm. Gar Richlin* on the brief, for appellant.

*Ward B. Coe, III, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

We are here presented with the question of whether the Maryland Constitution permits appeals to be taken directly from the Maryland Tax Court to this Court.

A gas station owned by appellant, Shell Oil Company, was

assessed by appellee, the Supervisor of Assessments of Prince George's County, at a rate of $3.00 per square foot for the tax year 1970-1971. This rate was higher than the assessment rate for commercial property other than gas stations in the area in which the station was located. Shell appealed to the Maryland Tax Court which affirmed the Supervisor's assessment. Shell then took an appeal directly to this Court from the decision of the Tax Court.

By order of March 10, 1975, we directed the parties to present argument on the issue of whether Chapter 385 of the Acts of 1971, codified as Maryland Code (1957, 1975 Repl. Vol.), Art. 81, §§ 229 (i) and (l), which provided for direct appeals from the Tax Court to this Court, is constitutional. The Supervisor of Assessments filed a motion to dismiss the appeal on the ground that Ch. 385 is unconstitutional, and a brief in support thereof. Shell filed a brief in opposition to the motion.

As recently discussed in *Montgomery Co. Council v. Supervisor of Assessments of Montgomery Co.*, 275 Md. 339, 347, 340 A. 2d 302, 306-307 (1975), the Maryland Tax Court was created by Ch. 757 of the Acts of 1959, the "principal purpose ... [of which] was to separate the 'quasi-judicial' functions of the State Tax Commission from its 'administrative' functions." However, despite the separation of "administrative" and "quasi-judicial" functions, the Legislature in Ch. 757 specifically designated the Tax Court as an "administrative body." Code (1957), Art. 81, § 224. And this Court has consistently recognized that the Tax Court is an "administrative agency." *County Executive for Montgomery County v. Supervisor of Assessments of Montgomery County*, 275 Md. 64, 340 A. 2d 246, 247 (1975); *Fairchild Hiller v. Supervisor*, 267 Md. 519, 521, 298 A. 2d 148 (1973).

Ch. 757 of the Acts of 1959, by adding new sections 229 (i) and 229 (l) to Code (1957), Art. 81, provided that appeals from final orders of the Tax Court could be taken "to the Circuit Court of any County or the Baltimore City Court of Baltimore City, wherein the property or any part of the property the assessment of which is involved may be situated." Section 229 (l) further provided that the Circuit

Court of the County or the Baltimore City Court "shall hear the case de novo without a jury . . . ." New section 229 (m), enacted by Ch. 757, provided for an appeal from the final decision of the circuit court or the Baltimore City Court to the Court of Appeals. By Ch. 261 of the Acts of 1966, the Legislature amended § 229 (l) of Art. 81, deleting the provision that the circuit court or the Baltimore City Court shall hear a Tax Court case de novo, requiring that the case be determined "upon the record of the Maryland Tax Court," and requiring that the Tax Court determination be affirmed unless "erroneous as a matter of law or unsupported by substantial evidence appearing in the record . . . ."

Ch. 385 of the Acts of 1971, the constitutionality of which was the subject of our order to the parties in this case, amended § 229 (i) of Art. 81 by providing that Tax Court orders shall be final unless an appeal is taken to the "Court of Appeals" instead of to the circuit courts or Baltimore City Court. Ch. 385 repealed all of the language of Art. 81, § 229 (l) and § 229 (m), and substituted new language providing that "[a]ny party to the proceedings may appeal from the [Tax] court's final order directly to the Court of Appeals." Nothing further concerning the appeal was set forth. The old language in § 229 (l), providing that the determination of the case shall be upon the record of the Tax Court, and specifying the "substantial evidence" test of judicial review, was repealed and not replaced.

The final statute bearing upon the issue before us is Ch. 448 of the Acts of 1975, effective July 1, 1975. By Ch. 448, the Legislature further amended §§ 229 (i) and 229 (l) of Art. 81 so as to provide that appeals from the Tax Court shall be taken to the Court of Special Appeals rather than to the Court of Appeals. Ch. 448 also amended Code (1974), § 12-308 (b) of the Courts and Judicial Proceedings Article, to add the "Maryland Tax Court" to the enumeration of "courts" over which the Court of Special Appeals has "initial appellate jurisdiction." [1]

---

1. Because the instant appeal was taken prior to the effective date of Ch. 448, the appeal came to this Court instead of to the Court of Special Appeals.

For the reasons hereinafter set forth, we think it clear that the Legislature may not constitutionally provide for appeals directly to this Court from the Maryland Tax Court. Therefore, we hold that Ch. 385 of the Laws of 1971 is unconstitutional. Furthermore, we conclude that Ch. 448 of the Laws of 1975, insofar as it provides that after July 1, 1975, appeals from the Tax Court are to be taken to the Court of Special Appeals, is also unconstitutional. Henceforth, judicial review of Tax Court cases shall be in the circuit courts of the counties or the Baltimore City Court, in accordance with the pertinent provisions of Ch. 757 of the Acts of 1959, as amended by Ch. 261 of the Acts of 1966, and codified in Code (1957, 1969 Repl. Vol.), Art. 81, §§ 229 (i) and 229 (l). Appeals from final decisions of the circuit courts and the Baltimore City Court shall be taken to the Court of Special Appeals in accordance with Code (1957, 1969 Repl. Vol.), Art. 81, § 229 (m), as amended by the valid provisions of Ch. 448 of the Acts of 1975 which indicate the intent that initial *appellate* jurisdiction in Tax Court cases shall be vested in the Court of Special Appeals instead of the Court of Appeals. Review of the Tax Court cases in this Court shall be by a writ of certiorari in accordance with Code (1974), §§ 12-201 and 12-203 of the Courts and Judicial Proceedings Article.

Article IV, § 14, of the Constitution of Maryland provides, in pertinent part, that "[t]he jurisdiction of the Court of Appeals shall.be co-extensive with the limits of the State and such as now is or may hereafter be prescribed by law." Unlike the. Constitution of 1851 which specified that "the Court of Appeals shall have appellate jurisdiction only," [2] the present Constitution of 1867 does not expressly deal with the matter. Nevertheless, as this Court has repeatedly held, such a jurisdictional limitation is inherent in the concept of the "Court of Appeals." In *Sevinskey v. Wagus,* 76 Md. 335, 336, 25 A. 468, 469 (1892), where a statute purporting to give the Court of Appeals jurisdiction to grant writs of habeas corpus was declared unconstitutional, the Court stated:

---

2. *See* Ex Parte O'Neill, 8 Md. 227, 229 (1855)

"This Court is an appellate Court, and is so styled in the Constitution; and no provision is made in that instrument for instituting or conducting any original proceedings herein. The Constitution, Art. 4, sec. 14, in defining the jurisdiction of this Court, declares, that 'The jurisdiction of said Court of Appeals shall be co-extensive with the limits of the State, and such as now is or may hereafter be prescribed by law;' that is to say, such appellate jurisdiction as the Court then had or might thereafter have conferred upon it. The Court at the time of the adoption of the present Constitution had, under former Constitutions, appellate jurisdiction only; and the terms by which the jurisdiction is defined in the present Constitution, are substantially the same in meaning as those employed in the Constitutions of 1851 and 1864. It would therefore seem to be clear that the jurisdiction of this Court is appellate only; for if not so, and the Legislature could confer original jurisdiction upon it in cases of *habeas corpus*, it could also confer such jurisdiction in cases of *mandamus*, or in cases of any other subject-matter of original jurisdiction. This manifestly was never contemplated by the framers of the Constitution; and therefore the attempt by the Legislature to confer such jurisdiction is simply nugatory and void."

And in *Board v. Attorney General*, 246 Md. 417, 427, 229 A. 2d 388 (1967), we said:

"The Court of Appeals exercises appellate jurisdiction only and the Legislature cannot confer original jurisdiction on the Court ... but the Legislature may confer the right on this Court to hear appeals in special cases provided appellate judicial functions and powers are left untrammeled."

The Court has reiterated this principle on many occasions.

*Burke v. Burke,* 204 Md. 637, 646, 106 A. 2d 59, 64 (1954); *Moore v. License Com., Pr. Geo's Co.,* 203 Md. 502, 505, 102 A. 2d 272, 274 (1954); *Arnold v. Warden of Md. Penitentiary,* 195 Md. 700, 702, 72 A. 2d 700, 701 (1950); *State v. Haas,* 188 Md. 63, 67, 51 A. 2d 647, 649 (1947); *Presbyterian Church v. Pugh & Co.,* 154 Md. 550, 553, 140 A. 844, 846 (1928); *State v. Rutherford,* 145 Md. 363, 368-369, 125 A. 725, 727 (1922); *Hendrick v. State,* 115 Md. 552, 558-559, 81 A. 18, 20 (1911); *Smith v. Hooper,* 95 Md. 16, 33, 54 A. 95 (1902); *In re Glenn,* 54 Md. 572, 594 (1880); *State v. Shields,* 49 Md. 301, 305 (1878).

Similarly, the Constitution of Maryland makes it clear that the Court of Special Appeals may exercise only appellate jurisdiction. Art. IV, § 14A of the Constitution provides:

> "The General Assembly may by law create such intermediate *courts of appeal,* as may be necessary. The General Assembly may prescribe the *intermediate appellate jurisdiction* of these courts of appeal, and all other powers necessary for the operation of such courts." (Emphasis supplied.)

The same constitutional test by which our appellate jurisdiction is determined is applicable to the Court of Special Appeals.

As the phrases "appellate jurisdiction" and "original jurisdiction" clearly connote, appellate jurisdiction does not arise until there is an initial exercise of judicial power or authority by a court. Appellate jurisdiction is the review of that initial exercise of judicial authority. Chief Justice Marshall explained in *Marbury v. Madison,* 1 Cranch 137, 175, 2 L. Ed. 60, 73 (1803):

> "It has been stated at the bar that the appellate jurisdiction may be exercised in a variety of forms . . . . This is true, yet the jurisdiction must be appellate, not original.
>
> "It is the essential criterion of appellate jurisdiction, that it revises and corrects the

proceedings in a cause already instituted, and does not create that cause . . . ."

Later Mr. Justice Story stated (Story, *Commentaries on the Constitution of the United States* (1833 ed.), § 1755):

"The essential criterion of appellate jurisdiction is, that it revises and corrects the proceedings in a cause already instituted, and does not create that cause. In reference to judicial tribunals, an appellate jurisdiction, therefore, necessarily implies, that the subject matter has been already instituted in, and acted upon, by some other court, whose judgment or proceedings are to be revised. . . . *To operate at all, then, under the constitution of the United States, it is not sufficient, that there has been a decision by some officer, or department of the United States; it must be by one clothed with judicial authority, and acting in a judicial capacity.*" (Emphasis supplied; footnotes omitted.)

*See also Ex Parte Bollman,* 4 Cranch 75, 101, 2 L. Ed. 554, 563 (1807).

That the exercise of appellate jurisdiction requires a prior action by some *judicial* authority, or the prior exercise of *judicial* power, has been regularly recognized by the courts of this country. *In re Jessup's Estate,* 81 Cal. 408, 22 P. 1028, 1030, 6 L.R.A. 594 (1889); *In re Constitutionality of House Bill No. 222,* 262 Ky. 437, 90 S.W.2d 692, 693, 103 A.L.R. 1085 (1936); *Trengen v. Mongeon,* 200 N.W.2d 50, 53 (N.D. 1972); *Waters-Pierce Oil Co. v. State,* 107 Tex. 1, 8, 106 S. W. 326, 330-331 (1907); *Hubbell v. McCourt,* 44 Wis. 584, 587 (1878). And courts have held that review of the decision of an administrative agency is an exercise of original jurisdiction and not of appellate jurisdiction. *Nevada Tax Commission v. Mackie,* 74 Nev. 276, 329 P. 2d 448, 449 (1958); *Southern Ry. Co. v. Public Service Comm.,* 195 S. C. 247, 10 S.E.2d 769, 772 (1940); *see also Range Oil Supply Co. v. Chicago, Rock Island and P. R. Co.,* 248 F. 2d 477, 478-479 (8th Cir. 1957); *Auditor*

*of State v. Atchison, Topeka and S.F. R.,* 6 Kan. 500, 7 Am. R. 575, 576-578 (1870).

The above-discussed principles are not disputed by Shell in this case. Shell's position, however, is that the Maryland Tax Court exercises a judicial or "adjudicative" function, that it "has none of the executive or quasi-legislative functions imposed upon other State administrative bodies," and that the "proceedings of the Tax Court are, in all essential respects, equivalent to those of a court of law." Shell argues, relying upon *Pope v. United States,* 323 U. S. 1, 65 S. Ct. 16, 89 L. Ed. 3 (1944), that the constitutional "status" of the Maryland Tax Court should not be controlling.[3] Instead, Shell's argument continues, we should have jurisdiction to review Tax Court cases "because of the 'judicial' character of the decision appealed from."

There are many respects in which the Maryland Tax Court lacks the characteristics normally associated with an entity exercising judicial authority. However, regardless of this, the Tax Court cannot be deemed to exercise initial judicial authority for a more fundamental reason. Under the Maryland Constitution, unlike the Federal Constitution, the judicial function may be exercised only by those courts enumerated in the Constitution. With the exception of the express authorization to create intermediate courts of appeal, the General Assembly of Maryland, unlike the Congress, is not empowered to create additional "courts" to exercise judicial power.

That the judicial power of the State of Maryland is vested only in those courts enumerated by the Maryland Constitution is made clear by Art. IV, § 1:

"The Judicial power of this State shall be vested in a Court of Appeals, and such intermediate courts

---

**3.** For recent Supreme Court discussions concerning the nature of the judicial power under the United States Constitution, the creation of inferior courts under that Constitution, and the jurisdiction of the Supreme Court to review their decisions, *see* Brenner v. Manson, 383 U. S. 519, 523-527, 86 S. Ct. 1033, 1036-1038, 16 L.Ed.2d 69 (1966), and the various opinions in Glidden Company v. Zdanok, 370 U. S. 530, 82 S. Ct. 1459, 8 L.Ed.2d 671 (1962).

of appeal, as shall be provided by law by the General Assembly, Circuit Courts, Orphans' Courts, such Courts for the City of Baltimore, as are hereinafter provided for, and a District Court; all said Courts shall be Courts of Record, and each shall have a seal to be used in the authentication of all process issuing therefrom."

This Court has consistently held that under Art. IV, § 1, of the Constitution, the judicial function may not be exercised by entities other than those courts described in the Constitution. As stated in *Dal Maso v. County Commrs.*, 182 Md. 200, 205, 34 A. 2d 464, 466 (1943):

"In this State, all judicial authority is only such as is provided for by Article 4 of the Maryland Constitution, and it has been decided that only judicial functions can be exercised which find their authority in that Article . . ., and that no court not coming within its provisions can be established in this State. This forbids any power in the Legislature to clothe administrative boards with any judicial authority. There may be states in which it can be done, but Maryland is not one of them."

And in *Solvuca v. Ryan & Reilly Co.*, 131 Md. 265, 282, 101 A. 710 (1917), we said:

"What is a judicial function does not depend solely on the mental operation by which it is performed or the importance of the Act. In solving this question, due regard must be had to the organic law of the state and the division of powers of government. In the discharge of executive and legislative duties, the exercise of discretion and judgment of the highest order is necessary, and matters of the greatest weight and importance are dealt with. It is not enough to make a function judicial that it requires discretion, deliberation, thought, and judgment. It must be the exercise of discretion and

judgment within the subdivision of the sovereign power which belongs to the judiciary, or, at least, which does not belong to the legislative or executive department. If the matter, in respect to which it is exercised, belongs, to either of the two last-named departments of government, it is not judicial."

*See also, e.g., County Council v. Investors Funding,* 270 Md. 403, 426-436, 312 A. 2d 225 (1973); *State Insurance Commissioner v. National Bureau of Casualty Underwriters,* 248 Md. 292, 298-300, 236 A. 2d 282, 285-287 (1967); *Maryland Committee for Fair Representation v. Tawes,* 228 Md. 412, 425-426, 180 A. 2d 656, 663 (1962); *Heaps v. Cobb,* 185 Md. 372, 379, 45 A. 2d 73, 76 (1945); *Hecht v. Crook,* 184 Md. 271, 277, 40 A. 2d 673, 675 (1945); *Quenstedt v. Wilson,* 173 Md. 11, 18, 194 A. 354 (1937); *Humphreys v. Walls,* 169 Md. 292, 298, 181 A. 735, 737 (1935); *Day v. Sheriff,* 162 Md. 221, 225, 159 A. 602 (1932); *Levin v. Hewes,* 118 Md. 624, 643, 86 A. 233, 239 (1912). It is the Maryland Constitution, and not the nature of the adjudicatory function which an entity performs, that determines whether or not it is performing a *judicial* function.

Moreover, Article 8 of the Declaration of Rights of the Maryland Constitution provides:

"That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."

This Court has consistently stated that Article 8 prohibits the courts from performing non-judicial functions and prohibits administrative agencies from performing judicial functions. *E.g., Dept. of Nat. Res. v. Linchester,* 274 Md. 211, 218-227, 334 A. 2d 514 (1974); *County Council v. Investors Funding, supra; Cromwell v. Jackson,* 188 Md. 8, 12-13, 52 A. 2d 79 (1947); *Dal Maso v. County Commrs., supra; Heaps v. Cobb, supra; Close v. Southern Md. Agr. Asso.,* 134 Md. 629, 638-642, 108 A. 209 (1919); *Board of Supervisors v. Todd,* 97 Md. 247, 262-265, 54 A. 963 (1903); *The State v. Chase,* 5 H

& J 297, 304 (1821). We have upheld the delegation to administrative agencies of some of the types of adjudications historically performed by courts, the delegation of so-called "quasi-judicial" functions. We have also recognized that the problems of modern life have necessitated an ever increasing delegation of authority to administrative bodies, and that "the separation of powers concept may constitutionally encompass a sensible degree of elasticity," *Linchester, supra,* 274 Md. at 220. See the recent discussions of these matters for the Court by Chief Judge Murphy in *County Council v. Investors Funding, supra,* and by Judge Digges in *Linchester, supra.* Nevertheless, any attempt to authorize an administrative agency to perform what is deemed a purely *judicial* function or power, would violate the separation of powers principle.

Thus, any attempt by the Legislature to impose judicial functions on the Maryland Tax Court would not, as Shell contends, result in the exercise of original judicial jurisdiction by that administrative agency, and therefore the exercise of appellate jurisdiction by a court reviewing the agency's decisions. Rather, this attempt would fail as violating the Article 8 separation of powers requirement as well as the limitation of Art. IV of the Constitution that only the courts there enumerated can exercise judicial power.

We do not believe, however, that the Legislature has imposed judicial functions on the Maryland Tax Court. Rather, the Legislature has delegated certain duties to the Tax Court, the performance of which requires it to make factual determinations and adjudicate disputes. The Tax Court, therefore, can be said to act in a quasi-judicial capacity. As just discussed, the Legislature may within limits delegate quasi-judicial functions to an administrative agency, and the delegation of these functions is not the delegation of a judicial function or judicial authority.

Since the Maryland Tax Court does not exercise a judicial function, review of a Tax Court decision is an exercise of original and not appellate judicial jurisdiction. Consequently, Ch. 385 of the Acts of 1971, and Ch. 448 of the Acts of 1975, insofar as they provide for appeals to this

Court and to the Court of Special Appeals from Tax Court decisions, are unconstitutional.

This Court has the duty, when finding that a statute is invalid in some respect, to separate the valid from the invalid provisions wherever possible. *Bringe v. Collins*, 274 Md. 338, 351, 335 A. 2d 670 (1975); *Clark's Park v. Hranicka*, 246 Md. 178, 185-186, 227 A. 2d 726 (1967). The test of severability is the effectiveness of a statute to carry out the original legislative intent without its invalid provisions. *Balto. v. A. S. Abell Co.*, 218 Md. 273, 290, 145 A. 2d 111 (1958). And where it appears that the Legislature would have enacted a statute even if it had known that certain provisions were invalid, the valid provisions of the statute should be separated from the invalid, and the statute enforced. *Sanza v. Md. Board of Censors*, 245 Md. 319, 338, 226 A. 2d 317 (1967); *Baltimore City v. Stuyvesant Co.*, 226 Md. 379, 391, 174 A. 2d 153 (1961).

Applying these principles to Ch. 385 of the Acts of 1971 and Ch. 448 of the Acts of 1975, we conclude that Ch. 385 is invalid in its entirety but that Ch. 448 will continue to have some effect. As previously discussed, Ch. 385 repealed the provisions of Code (1957, 1969 Repl. Vol.), Art. 81, § 229, providing for substantial evidence judicial review of Tax Court cases in the circuit courts and the Baltimore City Court, and it enacted new language providing for judicial review directly to this Court. Nothing in the statute or its legislative history suggests that the General Assembly would have repealed the existing judicial review provisions if it had known that direct judicial review in this Court was prohibited by the Constitution. The indication of legislative intent is to the contrary, for the enacting clause provides that the new language is "in lieu" of the provision for judicial review in the trial courts. The provisions were substitutional. To hold that the General Assembly would have intended to repeal the provisions for judicial review in the trial courts even if it had known that there could be no judicial review in the appellate courts, would be to attribute to the Legislature an intent to deny any judicial review to the decisions of an administrative agency. We have been

most reluctant to attribute any such intent to the Legislature. *See Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 331 A. 2d 55 (1975). Thus, the provisions of Ch. 385 are not severable, and the statute is invalid in its entirety. This results in the prior judicial review provisions in Code (1957, 1969 Repl. Vol.), Art. 81, § 229, providing for substantial evidence review of Tax Court decisions in the circuit courts, being in full effect except to the extent that they are affected by Ch. 448 of the Acts of 1975. *Cf. Howard County Comm. v. Westphal,* 232 Md. 334, 343, 193 A. 2d 56 (1963), and cases therein cited.

On the other hand, Ch. 448 of the Acts of 1975 reflects a legislative intent which may largely be carried out notwithstanding the statute's invalidity to the extent that it provides for appeals directly from the Tax Court to the Court of Special Appeals. The principal purpose of Ch. 448 was not to resolve a question of whether judicial review of Tax Court decisions should be in the Court of Special Appeals or the trial courts. Instead, as the language of the statute shows, the obvious purpose of Ch. 448 was to provide that the initial *appellate* jurisdiction in Tax Court cases should be vested in the Court of Special Appeals rather than the Court of Appeals. The statutory language, insofar as it reflects this purpose, is valid and can be given effect. Under the severability decisions of this Court, Ch. 448 is effective to amend the prior law so as to require that appeals from decisions of the circuit courts and the Baltimore City Court in Tax Court cases be taken to the Court of Special Appeals. Further review by this Court will be by way of certiorari.

Our holding that the Constitution does not allow us to review directly Tax Court decisions does not under the peculiar circumstances here require that the case be dismissed. Shell properly sought judicial review under the statutory provisions and rules which, prior to our decision today, governed such judicial review. Consequently, we believe that the appropriate action would be to transfer the case, including the complete record and briefs filed in this Court, to the Circuit Court for Prince George's County for expeditious judicial review by that court of the Tax Court's

decision. Other cases pending on our docket in the same posture will also be transferred to the appropriate trial courts, and we assume that the Court of Special Appeals will do likewise.

*Case transferred to the Circuit Court*
*for Prince George's County.*
*Costs to abide the result.*
*Mandate to issue forthwith.*