906 A.2d 415

**Douglas M. ARMSTRONG et al.**

**v.**

**MAYOR AND CITY COUNCIL OF BALTIMORE.**

No. 1704, Sept. Term, 2004.

Court of Special Appeals of Maryland.

Sept. 1, 2006.

J. Carroll Holzer, Towson, for Appellants.

Sandra R. Gutman (Ralph S. Taylor, City Sol., on the brief), Baltimore, for Appellee.

Panel: JAMES R. EYLER, KENNEY, LAWRENCE F. RODOWSKY (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

We are asked to determine the meaning of "zoning action," as used in Maryland Code (1957, 2003 Repl.Vol.), Article 66B, § 2.09(a)(1), which provides for judicial review of "zoning action" by the City Council of Baltimore. We will use this as an opportunity to clarify our prior decision, interpreting the same language, in *MBC Realty v. Mayor and City Council of Baltimore*, 160 Md.App. 376, 864 A.2d 218 (2004).

Douglas M. Armstrong, an appellant, and several other owners of residential properties in Baltimore City,[1] filed in the Circuit Court for Baltimore City a petition for judicial review of an ordinance (hereinafter Ordinance 04–659), enacted by the Mayor and City Council, appellee. The petition was filed pursuant to Maryland Code, Article 66B, section 2.09, and Title 7, chapter 200 of the Maryland Rules. Ordinance 04–659 granted permission for the establishment, maintenance, and operation of a parking lot to be used in connection with a proposed apartment building at 2807 Cresmont Avenue.

---

1. The other appellants are Joan L. Floyd, Howard B. McElwain, Jorge A. Gonzalez, F. Ernesto Kellum, Glen D. Gaddy, Jeffrey Groden–Thomas, and Wendi Groden–Thomas.

Appellants challenged Ordinance 04–659 on the grounds that (1) the City Council violated various provisions in the zoning code and in the subdivision regulations, and (2) Ordinance 04–659 constituted an unlawful taking of appellants' property.

Appellee filed a motion to dismiss, asserting there was no statutory right of judicial review in circuit court. The circuit court granted the motion. Appellants filed a motion to alter or amend judgment, which the circuit court denied.

Appellants appealed to this Court. Appellee moved to dismiss the appeal, contending that there was no statutory right of judicial review, and as a result, we had no jurisdiction to consider the appeal. In a prior unreported opinion, we granted appellee's motion to dismiss the appeal, and appellants petitioned for certiorari to the Court of Appeals. The Court of Appeals reversed and remanded the case to us to determine whether the circuit court had jurisdiction to consider the petition for judicial review. *See Armstrong v. Baltimore City,* 390 Md. 469, 475, 889 A.2d 399 (2006). We conclude that there was a right of judicial review in the circuit court and, thus, shall reverse and remand the case to the circuit court for further proceedings.

## Factual Background

On November 12, 2002, the Department of Housing and Community Development issued a permit to Cresmont Properties, LLC (Cresmont),[2] the developer of a 26–unit apartment building at 2807 Cresmont Avenue, to construct the apartment building with 33 off-street parking spaces. Appellants appealed the issuance of this permit to the Board of Municipal and Zoning Appeals (the Board), contending that the project violated section 10–504(a)[3] of the Baltimore City Zoning Code (the Zoning Code). Appellants based their argument on the

---

**2.** Cresmont is not a party to this case.

**3.** Section 10–504(a) provides, "[N]o land may be used as a parking lot ... unless authorized by an ordinance of the Mayor and City Council."

fact that the property was in the Charles Village/Remington parking lot district,[4] governed by Title 10, subtitle 5, and there was no parking lot ordinance authorizing the construction of the parking lot. The Board determined that because section 10–201 of the Zoning Code required "accessory"[5] off-street parking for all newly-erected structures,[6] Title 10, subtitle 5 did not apply, and a separate parking lot ordinance was not necessary.

Appellants filed a petition for judicial review in circuit court, alleging that the Board erred in approving the issuance of the permit without requiring the enactment of a separate parking lot ordinance. On November 4, 2003, the circuit court ruled in favor of appellants, basing its determination on the fact that the Zoning Code did not expressly except accessory uses from the requirements of section 10–504(a). Therefore, the circuit court ruled that a parking lot ordinance was required before a City agency could issue a permit and ordered that the construction permit be revoked.[7]

Appellee noted an appeal to this Court, but this Court dismissed the appeal on jurisdictional grounds. *See Mayor*

---

**4.** The Zoning Code contains two parking lot districts. One district is located in the central business area, and the other is located in the Charles Village/Remington area.

**5.** "Accessory use" is defined as a use that "(1) serves and customarily is incidental and subordinate to the principal use or structure; (2) is subordinate in area, extent, or purpose to the principal use or structure; (3) contributes to the comfort, convenience, or necessity of occupants, business, or industry in the principal use or structure served; and (4) . . . is located on the same lot as the principal use or structure served." Zoning Code section 1–102.

**6.** Section 10–201 provides in full, "For all newly-erected structures and all newly-established uses of land, accessory off-street parking facilities must be provided for that structure and use, as required by this title."

**7.** Neither this Court nor the Court of Appeals has decided whether City Council approval, processed in the form of a conditional use, was required under the law as it existed at the time of the issuance of the first permit in this case but, for present purposes, we assume it was because the circuit court so ruled and that decision was binding on the parties.

*and City Council of Baltimore v. Armstrong,* No. 2096, Sept. Term 2003, 163 Md.App. 704, filed August 10, 2005.

Subsequently, Cresmont requested the City Council to approve a parking lot ordinance permitting 33 off-street parking spaces at the Cresmont Avenue property. Bill 03–1228, which provided for such accessory parking, was introduced in the City Council, and the Council approved it. On March 25, 2004, the Mayor signed the bill as Ordinance 04–659, effective 30 days later. Pursuant to the Ordinance, a new construction permit was issued to Cresmont. Ordinance 04–659 is the subject of this appeal.

On December 2, 2004, in order to conform the City Code to prior practice,[8] the City Council approved Ordinance 04–855, amending the definition of "parking lot" in § 10–501 [9] of the Zoning Code to exclude accessory parking. As a result of the amendment, appellee asserts that it is no longer necessary, under section 10–504(a), that a parking lot ordinance be enacted to approve the construction of off-street accessory parking mandated by section 10–201.[10]

On April 19, 2004, appellants filed a petition for judicial review of Ordinance 04–659 in circuit court, asserting that Maryland Code, Article 66B, section 2.09(a)(1) provided a statutory right of appeal because approval of Ordinance 04–

---

**8.** The City Council explained in the Recitals to Ordinance 04–659, "By long-standing administrative practice by the City, required accessory parking uses do not require a Parking Lot Ordinance. Certain individuals are, however, contesting the practice in court. To expedite the development of the apartment building, the applicant requests that this Ordinance be granted."

**9.** Section 10–501 now provides, "In this subtitle, 'parking lot' means land used for the non-accessory off-street parking of 3 or more motor vehicles, together with the adjoining and perimeter areas required by this subtitle or by any other law of Baltimore City." Prior to the amendment, the language was identical except that it did not contain the word "non-accessory."

**10.** Appellants challenged Ordinance 04–855 in circuit court. The circuit court upheld the validity of the ordinance, and the appeal from that ruling is pending in this Court. *See Armstrong v. Mayor and City Council of Baltimore,* No. 2210, Sept. Term 2005.

659 constituted "zoning action" within the meaning of that section. Appellee filed a motion to dismiss, arguing that the appeal was erroneously brought under section 2.09 and Title 7, Chapter 200 of the Maryland Rules; there was no statutory authority for bringing the appeal; and the circuit court lacked subject matter jurisdiction to decide the appeal. After a hearing on the motion, by order dated August 13, 2004, the circuit court dismissed the petition. By order dated August 18, 2004, the circuit court also denied appellants' subsequent motion to alter or amend judgment.

On August 13, 2004, appellants appealed to this Court, and appellee filed a motion to dismiss the appeal, asserting that we too lacked subject matter jurisdiction. By order dated March 14, 2005, we dismissed the appeal.

On June 16, 2005, the Court of Appeals granted appellants' petition for certiorari, and on January 6, 2006, reversed and remanded the case to us for further proceedings. The Court of Appeals noted that section 2.09(e) of Article 66B of the Maryland Code provides for a right of appeal to this Court from any decision of the circuit court. *Armstrong,* 390 Md. at 475, 889 A.2d 399. The Court further explained,

It does not matter whether the Circuit Court did or did not have jurisdiction to entertain the judicial review action, whether it was right or wrong in its ruling. That is what the appeal is to resolve. So long as the Circuit Court entered a final or otherwise appealable judgment, which it did, an appeal will lie.

*Id.*

In this Court, appellants contend that Ordinance 04–659 was a conditional use authorization by the City Council, which constituted a "zoning action" subject to judicial review. Appellants argue that the conditional use authorization was an administrative, as distinguished from a legislative, act and the administrative grant of a conditional use is a "zoning action."

In response, appellee contends that, because of the subsequent enactment of Ordinance 04–855, this case is moot and should be dismissed. Relying heavily on *MBC Realty, LLC,*

*supra,* appellee also contends that Ordinance 04–659 was not a conditional use authorization, and even if it were, conditional use authorizations are not subject to judicial review under section 2.09.

We conclude that the case is not moot and § 2.09 did provide a right of judicial review.

### Discussion

### Mootness

Appellee argues that, because of the enactment of Ordinance 04–855, an ordinance approving a parking lot that is an accessory use is no longer required, and therefore, the issue of whether appellants are entitled to judicial review of Ordinance 04–659 is moot.

Appellee relies on *Lake Falls Ass'n v. Bd. of Zoning Appeals of Baltimore County,* 209 Md. 561, 121 A.2d 809 (1956), and *Grau v. Bd. of Zoning Appeals of Baltimore County,* 210 Md. 19, 122 A.2d 824 (1956). In both cases, the challenge was to a change in zoning classification with respect to a specific property. In both instances, the zoning classification under attack was again changed prior to a decision on appeal. In each case, the Court of Appeals concluded that the issue was moot.

In *Lake Falls* and *Grau,* mootness was apparent because the zoning classifications were under attack, not an action taken pursuant to the classification, and the classification was changed prior to a decision on appeal. By the time the case was heard, the properties in question were no longer subject to that classification. In the case before us, the question of whether a parking lot ordinance is required for the Cresmont property may well be moot, but the effect of Ordinance 04–855 on the building permit process is not before us, and the record is insufficient for us to make that determination. That determination may be made on remand. Additionally, appellants filed a separate action attacking the validity of Ordinance 04–855. The circuit court upheld its validity, and that case is now pending in this Court. *See Armstrong v.*

*Mayor and City Council of Baltimore,* No. 2210, Sept. Term 2005.

Regardless of the above, the issue before us is a matter of public importance which we can address even if the issue is moot. *See J.L. Matthews, Inc. v. Maryland–Nat'l Capital Park & Planning Comm'n,* 368 Md. 71, 96–97, 792 A.2d 288 (2002). The issue enables us to clarify what constitutes "zoning action" by the City Council so that all interested persons will know what procedural avenue for seeking judicial review is applicable in a given situation. It also enables us to limit overly broad language in *MBC Realty,* our prior opinion.

## Judicial review

### General principles

■ Technically, a circuit court does not exercise "appellate" review of a decision by a local administrative or legislative body. *Gisriel v. Ocean City Bd. of Supervisors of Elections,* 345 Md. 477, 490–91, 693 A.2d 757 (1997); *Shell Oil Co. v. Supervisor of Assessments of Prince George's County,* 276 Md. 36, 43, 343 A.2d 521 (1975) ("[T]he exercise of appellate jurisdiction requires a prior action by some judicial authority, or the prior exercise of judicial power[.] . . . [R]eview of the decision of an administrative agency is an exercise of original jurisdiction and not of appellate jurisdiction.").

■ The basis for judicial review of a decision by a local administrative or legislative body acting in an adjudicatory or quasi-judicial capacity may be (1) a *statute* or (2) common law or an equity writ (mandamus, injunction, certiorari, or declaratory judgment). *Criminal Injuries Comp. Bd. v. Gould,* 273 Md. 486, 500, 331 A.2d 55 (1975); *Lohss v. State,* 272 Md. 113, 116, 321 A.2d 534 (1974). We shall refer to adjudicatory or quasi-judicial actions as administrative actions.

In both instances referred to above, the circuit court is exercising original and not appellate jurisdiction. *Shell Oil,* 276 Md. at 43, 343 A.2d 521. Nevertheless, judicial review actions based on statute were regularly called "appeals" prior to the *Shell Oil* case. Moreover, even since the *Shell Oil* case,

such actions have frequently been referred to as "appeals" in cases, statutes, and the Maryland Rules. *See Gisriel,* 345 Md. at 495, 693 A.2d 757. In 1993, the Court of Appeals adopted Title 7 of the Maryland Rules, which reflected the correct terminology and referred to statutory review of an act by an administrative agency as an action for judicial review. Rule 7-201. Despite the language of Title 7, actions for judicial review based on statute are still frequently called "appeals" or, sometimes, "administrative appeals."

In the absence of a statutory basis for judicial review of administrative decisions by a local body, such decisions are reviewable, based on a court's inherent power, in an action invoking the original jurisdiction of the circuit court, through the writ of mandamus, by injunction, declaratory action, or by certiorari. *Gould,* 273 Md. at 500–04, 512, 331 A.2d 55; *see also Bucktail, LLC v. County Council of Talbot County,* 352 Md. 530, 542, 723 A.2d 440 (1999); *Baltimore Imp. Car Serv. & Storage, Inc. v. Maryland Port Auth.,* 258 Md. 335, 342, 265 A.2d 866 (1970); *Hammond v. Love,* 187 Md. 138, 144, 49 A.2d 75 (1946); *Heaps v. Cobb,* 185 Md. 372, 378–79, 45 A.2d 73 (1945); *Hecht v. Crook,* 184 Md. 271, 280, 40 A.2d 673 (1945).

Based on *Gisriel* and *Bucktail,* it is clear that the *Gould* principle applies not only to the acts of administrative agencies but also extends to the acts of legislative bodies when the acts are administrative in nature. In *Gisriel,* the decision maker was the City Council of Ocean City, and in *Bucktail,* the decision maker was the County Council of Talbot County. In both instances, the *Gould* principles were applied.

There is little, if any, difference in the standard of review between statutory judicial review of an administrative action and a non-statutory review under *Gould* and its progeny. While the language is not always the same, the Court of Appeals has, on several occasions, stated that the substantial evidence or arbitrary or capricious test, usually associated with statutory judicial review of administrative actions, applies to non-statutory review of administrative actions. *See Bucktail,* 352 Md. at 550–52, 723 A.2d 440; *Goodwich v. Nolan,* 343

Md. 130, 147, 680 A.2d 1040 (1996); *Silverman v. Maryland Deposit Ins. Fund Corp.*, 317 Md. 306, 325–26, 563 A.2d 402 (1989); *Dickinson–Tidewater, Inc. v. Supervisor of Assessments of Anne Arundel County*, 273 Md. 245, 255–56, 329 A.2d 18 (1974). In *Harvey v. Marshall*, 389 Md. 243, 295–304, 884 A.2d 1171 (2005), the Court of Appeals reviewed the two different lines of cases and concluded that the standard of review was essentially the same.

██ A legislative or quasi-legislative decision, as distinguished from a quasi-judicial or administrative decision, is also subject to court review, by invoking the court's original jurisdiction. Unlike ordinary statutory and nonstatutory judicial review of administrative decisions, legislative actions are subject to much more limited review. *County Council of Prince George's County v. Offen*, 334 Md. 499, 506–07, 639 A.2d 1070 (1994); *Dep't of Natural Res. v. Linchester Sand & Gravel Corp.*, 274 Md. 211, 221–24, 334 A.2d 514 (1975) (where a government body "is acting in a manner which may be considered legislative in nature . . ., the judiciary's scope of review of that particular action is limited to assessing whether the agency was acting within its legal boundaries").

*Administrative versus legislative*

██ In light of these general principles, the first question we must resolve is whether, in enacting Ordinance 04–659, the City Council was acting in a quasi-judicial, or administrative capacity, rather than in a legislative one. "The difference between adjudicative and legislative facts is not easily drawn[.]" *Montgomery County v. Woodward & Lothrop, Inc.*, 280 Md. 686, 711–12, 376 A.2d 483 (1977). Adjudicative facts are "facts about the parties and their activities, businesses and properties. They usually answer the questions 'of who did what, where, when, how, why, with what motive or intent[.]' " *Id.* at 712, 376 A.2d 483 (quoting Davis, Administrative Law Supplement, § 7.02 (1970)). On the other hand, "legislative facts 'do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law and policy and discretion.' " *Id.* (quoting Davis, *supra*, at

section 7.02). The difference essentially depends on "whether the decision is to be made on individual or general grounds." *Id.*; *see also Bucktail,* 352 Md. at 545, 723 A.2d 440 ("This determination is not based on whether the zoning decision adversely affects an individual piece of property but whether the decision itself is made on individual or general grounds."). Moreover, it is not determinative that a zoning authority's decision may dramatically affect an individual; rather, "it is the nature of the decision's fact-finding process, not the ultimate effect of the decision" that determines whether the action is adjudicative or legislative in nature. *Woodward & Lothrop,* 280 Md. at 712, 376 A.2d 483.

 The distinction between a legislative body acting administratively or legislatively has been discussed in the zoning context. For example, the legislative body acts in a legislative capacity when it engages in comprehensive, rather than piecemeal, rezoning proceedings because it does not consider and determine adjudicative facts concerning particular parties. *Id.* The focus is not on a single piece of property, but on a "considerable number of properties as they relate to each other and to the surrounding area." *Id.* at 713, 376 A.2d 483. By contrast, in piecemeal rezoning hearings, the zoning authority "considers a single piece of property and must make . . . factual determination[s]." *Id.* at 712, 376 A.2d 483. Therefore, piecemeal rezoning hearings are administrative in nature, even though the final action in granting or denying the reclassification is legislative in character. *Bucktail,* 352 Md. at 545, 723 A.2d 440 (citing *Hyson v. Montgomery County Council,* 242 Md. 55, 64–65, 217 A.2d 578 (1966)).

In *Mayor and Council v. Woodmont Country Club,* 348 Md. 572, 705 A.2d 301 (1998), the issue before the Court of Appeals was whether there was a right of reasonable cross-examination at a hearing in which the City passed several ordinances, officially levying special assessments against a particular property in connection with construction of a road and water main. The City argued Woodmont had no right of cross-examination because the hearings were legislative in nature. The Court

found that, although the determination of whether to impose a special assessment and the manner of doing so are legislative determinations, the hearing process itself was adjudicative in nature. *Woodmont,* 348 Md. at 584, 705 A.2d 301. The Court explained:

> [T]he application of the mode of assessment to a particular piece of property to determine the specific amount to be assessed against that particular property is an adjudicative act. The proceeding to determine the amount of benefit to a specific piece of property is adjudicatory or quasi-judicial. . . . Thus, the determination of whether the Council is acting in a quasi-judicial or quasilegislative manner is dependent upon the nature of the particular act in which it is engaged. In a case such as this, where the Council was holding a hearing, receiving written and oral testimony, and considering evidence to determine the specific amount of special benefit to a particular piece of property, the Council at that point was acting in a quasi-judicial capacity, even if earlier actions in the process or the final act of passing an ordinance to levy a special assessment constitute legislative functions.

*Id.* at 584–85, 705 A.2d 301.

 In this case, similar to *Woodmont,* the hearing to consider Ordinance 04–659 was adjudicative in nature. During the hearing before the Land Use and Planning Committee of the City Council, various members of the community testified regarding the effect the building and parking lot had on their and nearby properties. Committee members asked Cresmont to testify as to the economic impact of improving the Cresmont property and allowing accessory parking. The focus of the hearing was on a single piece of property and the effect of its development on surrounding properties.

In addition, under section 10–504 of the Zoning Code, in determining whether to allow use of land as a parking lot, the Mayor and City Council may consider several factors: (1) the need for the parking lot; (2) the proposed appearance of the parking lot; and (3) possible aesthetic damage to the area

surrounding the parking lot. § 10–504(b). These factors involve fact-intensive consideration of a specific property.

Moreover, we note that the Zoning Code is divided into zoning districts (sometimes referred to as Euclidean districts), and the property at issue is in a B–2 district. *See* Code Title 6 for description of business districts. The Code also has parking lot districts, however, which overlay the other districts. *See* Code § 10–501, et seq. Title 10 of the Zoning Code legislatively creates parking lot districts and gives the Council authority to approve parking lots within those districts. The Council is required to approve each parking lot and may impose conditions as part of any approval that may vary from property to property. The action is property-specific, and therefore, appears to be an administrative action.

While what is quasi-legislative and what is quasi-administrative is sometimes difficult to discern, in general, Title 16 of the Zoning Code reflects the distinction between legislative and administrative action. This section distinguishes between "legislative authorizations" and "zoning legislation." "Legislative authorization" means an ordinance that relates to a "specific property," and includes: (1) a change in the zoning classification of any property; (2) a conditional use; or (3) a Planned Unit Development. § 16–101(b). "Zoning legislation" means: (1) any legislative authorization and (2) any amendment to this article. § 16–101(c). Conditional uses are categorized in section 16–101 with zoning reclassifications and ordinances that relate to a specific property, as contrasted with text amendments. We are not suggesting that all "legislative authorizations" are administrative acts and all "zoning legislation" are legislative acts. Generally, however, "legislative authorizations" have more characteristics of administrative, rather than legislative, acts, and "zoning legislation" has more characteristics of legislative, rather than administrative, acts.

Appellants argue that Ordinance 04–659 was the grant of a conditional use. Appellee argues that it was not a conditional use, primarily because it is referred to in the Zoning Code as a "parking lot ordinance," not a conditional use.

With respect to that issue, we note that Title 10, subtitle 5 (parking lot districts) does not reference Titles 14 (conditional uses) or 16 (legislative authorizations and amendments). It merely requires compliance with any other requirements of the article. § 10–505. The City, however, treated Ordinance 04–659 as a conditional use, labeled it as such, and, more importantly, followed the procedures strictly reserved for conditional use bills under section 16–404 of the Zoning Code.

Ordinarily, after a bill proposing a legislative authorization receives a favorable vote of the City Council on second reading, the bill may not proceed to the third and final reading "until it has been placed on the third reading calendar as a hold-over item for at least 1 regular meeting of the City Council." § 16–404(b). Section 16–404(a) provides, however, that this hold-over requirement does not apply to conditional use bills. In this case, the second reading occurred on March 8, 2004, and the bill was approved as a result of the vote on its third reading on March 22, 2004. March 8 and March 22 were successive regular Council meetings, and therefore, the bill was not held over for one meeting, as would be required for a non-conditional use bill.

Thus, even though the Zoning Code refers to the grant of approval for a parking lot as a parking lot ordinance, it has the characteristics of a conditional use. The City Council, by legislative act, authorized parking lots, but retained the right to approve such lots on a property specific basis, apparently in order to be able to impose conditions as it deemed necessary. We conclude that Ordinance 04–659 either granted a conditional use or, for practical purposes, should be treated as having granted a conditional use. In any event, we conclude that the approval was administrative in nature.

*Statutory versus non-statutory review*

Having established that the City Council's action in approving Ordinance 04–659 was administrative in nature, we must address whether it is subject to judicial review, as a statutory action governed by Title 7, or a non-statutory action based on

the inherent power of the courts. Appellants have sought statutory judicial review.

The statutory basis for judicial review of action by the City Council appears in Article 66B, section 2.09(a)(1) of the Maryland Code. That section provides:

> An appeal to the Circuit Court [for] Baltimore City may be filed jointly or severally by any person, taxpayer, or officer, department, board, or bureau of the City aggrieved by:
>
> (i) A decision of the Board of Municipal and Zoning Appeals; or
>
> (ii) A zoning action by the City Council.

◼◼◼◼ It is clear under Maryland law that piecemeal zoning reclassifications with respect to specific properties are "zoning actions" within the meaning of section 2.09. As extensively discussed in *Bd. of County Comm'rs of Carroll County v. Stephans*, 286 Md. 384, 408 A.2d 1017 (1979),[11] and *MBC Realty, LLC v. Mayor and City Council of Baltimore*, 160 Md.App. 376, 864 A.2d 218 (2004), the legislative history of section 2.09 reveals that "zoning action" includes "reclassification" by the City Council, referring to piecemeal or spot zoning, and does not include comprehensive zoning or rezoning. *See Stephans*, 286 Md. at 390–97, 408 A.2d 1017; *MBC Realty*, 160 Md.App. at 383–85, 864 A.2d 218. Piecemeal and spot zoning concern specific pieces of property, and such actions are ordinarily initiated by the property owner. *Mayor and Council of Rockville v. Rylyns Enterprises, Inc.*, 372 Md. 514, 535, 814 A.2d 469 (2002). Comprehensive zoning, by contrast, covers a larger area and is normally initiated by the local government. *Id.*

◼◼◼ Zoning text amendments are not "zoning actions." *See Stephans*, 286 Md. at 397, 408 A.2d 1017 ("Challenges in

---

**11.** *Stephans* discusses Article 66B, section 4.08, rather than section 2.09. These sections, however, to the extent relevant here, are identical. *See MBC Realty*, 160 Md.App. at 385, 864 A.2d 218. Section 2.09 applies to Baltimore City and section 4.08 applies to non-charter counties. *Id.* at 382, 864 A.2d 218.

the courts to the adoption of comprehensive plans, zoning texts, and zoning text amendments must come in proceedings other than administrative appeals."); *MBC Realty,* 160 Md. App. at 389, 864 A.2d 218.

Generally, a zoning reclassification of a specific property is an administrative action, and comprehensive zoning or rezoning is a legislative action. Ordinarily, the adoption of zoning texts and zoning text amendments are legislative actions. *See Loh v. Town Plan & Zoning Comm'n,* 161 Conn. 32, 282 A.2d 894, 898 (1971); *Interstate Power Co., Inc. v. Nobles County Bd. of Comm'rs,* 617 N.W.2d 566, 573–74 (Minn.2000); *Fallin v. Knox County Bd. of Comm'rs,* 656 S.W.2d 338, 342 (Tenn.1983).

We do not have to decide whether "zoning action" is synonymous with administrative action. The question we do have to decide, the final question before reaching a conclusion, is whether "zoning action" is limited to reclassifications. We conclude it is not, and "zoning action" includes an action by the City Council granting a conditional use or what is tantamount to a conditional use, utilizing an administrative type process, applicable to a specific property, when the thrust of the attack is directed at the use granted for the specific property. We have already concluded that Ordinance 04–659 falls within that category.

### Legislative history, Stephans, and MBC Realty

In *Stephans,* the Court of Appeals determined that the Carroll County Commissioners' adoption of a comprehensive "mini" plan and text amendments were not "zoning actions" within the meaning of section 4.08. The Court did not have before it the question now before us, whether an administrative action as described above constitutes "zoning action." The Court reviewed the statutory history of Article 66B, sections 2.09 and 4.08, and we summarized that review in *MBC Realty.* 160 Md.App. at 382–85, 864 A.2d 218.

In the interest of completeness, we shall again briefly review that history. Article 66B was enacted in 1933. *Bd. of*

*County Comm'rs of Cecil County v. Gaster,* 285 Md. 233, 239, 401 A.2d 666 (1979). It provided for judicial review only from decisions by a Board and only on writ of certiorari. *Stephans,* 286 Md. at 391, 408 A.2d 1017. In 1962, the statute was amended to provide for judicial review of decisions by a Board, without the certiorari requirement. *Id.* at 392, 408 A.2d 1017. There was no corresponding right with respect to a decision by a local legislative body. With respect to those decisions, a party had to file an action invoking the original jurisdiction of a court. *MBC Realty,* 160 Md.App. at 383, 864 A.2d 218.

In 1970, sections 2.09 and 4.08 were amended to permit statutory judicial review of a "reclassification by the local legislative body," in addition to the already existing right to statutory review of a Board decision. *Stephans,* 286 Md. at 392, 408 A.2d 1017. The right of review was pursuant to chapter 1100, subtitle B of the Maryland Rules. *Id.* (forerunner to Title 7, chapter 200).

The 1970 amendments to Article 66B were extensive and were the result of recommendations made by the Maryland Planning and Zoning Law Study Commission (the Commission). The Commission was created by the legislature and submitted its final report in December, 1969 (the Report). According to the Report, the Commission was created because extensive development following World War II proved that the provisions in Article 66B were inadequate to cope with the resultant pressures.

The Report addressed the subjects of "planning," "reclassification," "special type controls," and the "Model Land Development Code" (the Model Code) [12] in separate sections. In general, the Commission recommended that (1) planning "be accorded its proper role in land use and development;" (2) with respect to reclassification, the "bench-made change-mistake rule" be clarified to allow for additional factors important to a change of land use; (3) as "special type controls,"

---

**12.** The Model Code is described as having been prepared by Professor Jan Krasnowiecki of the University of Pennsylvania Law School as a possible alternative to article 66B.

ordinances be adopted to encourage the use of planned unit development and to permit "conditional zoning;" and (4) charter counties review the Model Code and consider its adoption. With respect to "reclassification," the Commission described it as "[o]ne of the most troublesome areas of zoning[.]" Of particular interest is that the Commission observed that reclassifications were normally performed by a local legislative body, and there was no express right of "appeal" in Article 66B from such decisions. The Commission also noted, however, that the Court of Appeals had determined there was a right to judicial review of such decisions in any event, pursuant to its inherent power, and the "change-mistake rule" had been judicially developed in reviewing reclassifications.

Appendix A to the Report contained specific recommendations for amendments to Article 66B, with commentary. A note under the proposed amendment to section 2.08 referred to the note under section 4.08. The latter note stated:

This section is unchanged except for the inclusion of an appeal process from reclassification decisions of the local legislative body.

It can be argued that under the present system appeals from reclassification decisions may be launched in equity at any time. This has proven to be a detrimental factor to most persons concerned with such an action. The appeal process to be used, Chapter 1100, Subtitle B, Maryland Rules, requires noting of an appeal within thirty days and filing of the appeal within another ten days. This is ample time to bring an appeal for review[.] . . .

In 1975, sections 2.09 and 4.08 were amended to substitute "zoning action" for "reclassification by the local legislative body." *Stephans*, 286 Md. at 393, 408 A.2d 1017. In addition, there were other amendments clarifying the right of appeal from circuit court decisions and permitting local jurisdictions to provide for appeals to circuit courts in addition to the appeal provided for in subsection (a). Those provisions are not relevant except that the Court, in *Stephans*, concluded that, because they were referenced in the titling and the

change to "zoning actions" was not, the latter change was stylistic. *Id.* at 396, 408 A.2d 1017.

We now turn our attention to *MBC Realty.* It is sometimes difficult to distinguish between an action that is quasi-legislative versus an action that is quasi-administrative in nature. In assessing the nature of judicial review, it is also important to consider the nature of the attack on the action in question. In other words, in a given situation, there may be both legislative and administrative acts by a legislative body, and what is being attacked may determine the nature of review. *See Cardon Investments v. Town of New Market,* 302 Md. 77, 485 A.2d 678 (1984).

If the action is legislative or quasi-legislative, it is not subject to ordinary judicial review, as previously stated. In *MBC,* the thrust of the attack was on text amendments that amended the applicable urban renewal plan and the Zoning Code to create a new conditional use. The actions were legislative in nature. The subsequent grant of a conditional use by the City Council was pursuant to the earlier legislative action and also contained conditions that affected more than one property. 160 Md.App. at 381, 864 A.2d 218. The issue in *MBC* was whether the Council's actions were subject to statutory judicial review. We concluded that the thrust of the attack was directed at legislative actions, and that the actions, considering them collectively, did not constitute "zoning action." There was a separate action pending, seeking non-statutory judicial review, in which the Council's actions were being legally challenged. We did not address the merits of the attack but simply stated that the merits could be pursued in that separate action.

In reaching our conclusion in *MBC,* rather than limiting our reference to conditional uses to the facts in that case, we used overly broad language, indicating that the grant of a conditional use could not constitute "zoning action" within the meaning of Article 66B. Generally, the grant of a conditional use applicable to a specific property is administrative and, when the attack is on that grant, as in this case, it constitutes

"zoning action." To the extent it is inconsistent with this opinion, the language in *MBC Realty* is disapproved.

The conclusion we reach is consistent with the Commission's report in 1969, the subsequent amendments to Article 66B, the language "zoning action," and takes into account the development of the law relating to judicial review since the amendments to Article 66B. While the standard of review of an administrative action may be practically the same, whether statutory or non-statutory, we conclude that the certainty of timing requirements and the benefit of knowing the type of judicial review to seek are important aspects of judicial review. When uncertain, practitioners sometimes file two actions, one seeking statutory review and the other seeking non-statutory review, because if they file one action and are wrong, a court may not treat the action as if it had asserted the proper basis for review.

While there does not appear to be a prior reported opinion squarely on point, we note that the Court of Appeals, without addressing the issue, proceeded consistently with the result we reach in both *Attman/Glazer P.B. Company v. Mayor and Aldermen of Annapolis,* 314 Md. 675, 552 A.2d 1277 (1989) (review of conditional use granted by City Council of Annapolis for construction of office building), and *Zellinger v. CRC Development Corp.,* 281 Md. 614, 380 A.2d 1064 (1977) (review of conditional use granted by City Council of Baltimore for establishment of housing for the elderly on specified property). In neither case was the issue of statutory versus non-statutory judicial review raised, however, and in addition, *Zellinger* was decided before *Stephans.* Additionally, we note that the Court, in *Gisriel,* suggested that section 4.08 which, for our purposes, is identical to section 2.09, is not limited to a change in zoning reclassification but could include other administrative actions. 345 Md. at 501 n. 16, 693 A.2d 757. It appears proper to characterize this statement as dicta, however.

For the a foregoing reasons, we conclude that appellants' action may proceed as a statutory judicial review action.

JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.