**MBC REALTY, LLC, et al., Plaintiffs**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE, et al., Defendants**

**No. CIV.AMD 03–2260.**

United States District Court, D. Maryland.

Jan. 10, 2005.

James E Carbine, Law Office of James E Carbine, Baltimore, MD, for Plaintiffs.

Sandra R Gutman, Baltimore, MD, Herbert Better, Zuckerman Spaeder LLP, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

DAVIS, District Judge.

In this removed action, a group of downtown Baltimore City commercial property owners challenge certain legislative enactments of the Mayor and City Council of Baltimore City ("the City"). Essentially, plaintiffs complain that the City acted unlawfully in respect to its grant of authority for the erection of "Times Square style" billboards on a City-owned sports arena in a downtown business district. The amended complaint asserts seven claims for declaratory and injunctive relief: five claims under state common law and statutory law for improper zoning; one claim under the Maryland Constitution; and one claim pursuant to 42 U.S.C. § 1983 for violation of the equal protection clause of the Fourteenth Amendment.[1] Now pending, *inter alia*, is the City's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state an equal protection claim. For the reasons stated herein, the motion shall be granted. Furthermore, as the sole federal claim is no longer a part of this case, I shall decline to exercise supplemental jurisdiction and remand the state law claims to the Circuit Court for Baltimore City.

## I.

The applicable standard for the review of a complaint challenged by a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is well settled:

A Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). Furthermore, the "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355

---

**1.** Plaintiffs do not cite 42 U.S.C. § 1983 as the basis for their sole federal constitutional claim, but it is clear that they rely on such a cause of action.

U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Rather, Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). *Migdal v. Rowe Price–Fleming Int'l, Inc.,* 248 F.3d 321, 325–26 (4th Cir.2001). It is also important to be mindful, however, that the defendants are entitled to have the *legal sufficiency* of the complaint fully examined and that, although the truth of all facts is assumed, consistent with the complaint's allegations, *see Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the court need not accept the legal conclusions drawn from the facts, *see Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir.1991), or unwarranted inferences, unreasonable conclusions, or arguments. *See generally* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990 & 2004 Supp.).

## II.

This is the second of two cases filed by plaintiffs in respect to the city ordinances at issue here. After the removal of this case to federal court, it was informally stayed pending the resolution of a parallel action in the Circuit Court for Baltimore City in connection with a petition for judicial review of the challenged enactments filed by plaintiffs in state court. The Maryland Court of Special Appeals has recently affirmed the state trial court's dismissal of the petition for judicial review in a reissued published opinion. In its opinion affirming the dismissal of the state case, the state appellate court set forth the following procedural history of the matters in dispute, in a summary which, without material variation, tracks the allegations of the amended complaint filed in this case, or which involves facts of which judicial notice may be taken and as to which the parties here do not dispute:

MBC Realty, LLC, an appellant, and various other landowners in Baltimore City, filed in the Circuit Court for Baltimore City a petition for judicial review of certain ordinances enacted by the Mayor and City Council of Baltimore, an appellee. The effect of the ordinances in question was to permit general advertising signs to be placed on the 1st Mariner Arena as a conditional use under the City's zoning laws. Appellants challenged the validity of the ordinances on the ground that they constituted illegal spot, piecemeal, contract, and conditional zoning and on the ground that they violated the equal protection clause of the Fourteenth Amendment to the United States Constitution. Arena Ventures, L.L.C., pursuant to a contract with the entity that manages the Arena, has the right to sell advertising and signage for the Arena. Clear Channel Outdoor, Inc., pursuant to a contract with Arena Ventures, L.L.C., has the right to construct and maintain outdoor advertising signage on the Arena. Arena Ventures, L.L.C. and Clear Channel Outdoor, Inc. intervened as respondents and are additional appellees.

Appellants filed their petition pursuant to Md.Code (1957, 2003 Repl.Vol.), Art. 66B, § 2.09 (hereinafter " § 2.09") and Title 7, Chapter 200 of the Maryland Rules. The circuit court granted a motion to dismiss filed by appellees on the ground that Section 2.09 does not provide for an administrative appeal under the circumstances of this case. We agree with the circuit court and shall affirm the judgment.

\*      \*      \*      \*      \*      \*

Prior to March 24, 2000, general advertising signs (commonly referred to as billboards), were permitted as condition-

al uses, subject to express limitations, in certain business and industrial districts in Baltimore City. On March 27, 2000, the City enacted an ordinance, which repealed and reenacted, with amendments, several sections of the zoning code, and also added new sections. The ordinance prohibited the placement of new advertising signs and permitted existing signs as nonconforming uses. The prohibition is commonly referred to as a "moratorium" on the construction of new billboards.

The ordinance recited, in part, that: (1) general advertising signs "constitute a separate and distinct use of the land on which they are placed and affect the use of adjacent streets, sidewalks" and other places open to the public; (2) the "unregulated construction, placement, and display of signs constitute a public nuisance[;]" (3) general advertising signs "endanger the public safety by distracting the attention of drivers from the roadway and may endanger the public health, safety, and welfare[;]" and (4) general advertising signs "might also result in harm to the welfare of the City by creating visible clutter and blight and by promoting a negative aesthetic impact[.]" The result of the enactment of this ordinance was that general advertising signs ceased to be a conditional use and became a prohibited use.

On April 9, 2003, the City enacted the three ordinances in question. Ordinance 03–513 amended the 1977 Urban Renewal Plan for Market Center to provide that "[g]eneral advertising signs erected or placed on publicly-owned stadiums and arenas are allowed if approved by ordinance as a conditional use [.]" Ordinance 03–514 amended the zoning code to authorize, in the B–5 district, as a conditional use that required approval by ordinance, general advertising signs on publicly owned stadiums and arenas. The ordinance further provided that all bills seeking approval of such a conditional use had to be accompanied by a plan for the removal of at least one existing general advertising sign for each proposed sign. Ordinance 03–515 permitted the construction of general advertising signs on the 1st Mariner Arena, subject to express conditions, including the removal of certain signs at other locations in the City.

Ordinance 03–513 became effective upon enactment, and the other two ordinances became effective 30 days after enactment.

*MBC Realty, LLC v. Mayor and City Council of Baltimore,* 160 Md.App. 376, 864 A.2d 218, 220–21, 2004 WL 2973589, *1–2 (Md.Ct.Spec.App. December 27, 2004) (alterations in original; footnotes omitted).[2]

The gravamen of the plaintiffs' federal equal protection claim is their allegation

---

**2.** The Court of Special Appeals took care to state that its rejection of the challenge to the disputed ordinances, as impermissible via a petition for judicial review, would have no preclusive effect in this case asserting constitutional and non-constitutional claims within the court's general jurisdiction:

> We conclude by noting that, at or about the same time that appellants filed a petition for judicial review in circuit court, they filed a separate suit in circuit court, invoking the court's general jurisdiction. At the request of appellees, the case was removed

to the United States District Court for the District of Maryland, based on an allegation that the ordinances violated the equal protection clause of the Fourteenth Amendment. Appellees filed a motion to stay, and appellants filed a motion to remand. Both motions were denied, and no further proceedings have occurred. There is nothing in this opinion that prevents appellants from pursuing the questions of illegality, not properly before us in this case, in the separate suit.

864 A.2d at 226, 2004 WL 2973589, *7.

that the City has created "two classifications" of landowners:

> [T]he City has adopted an overall legislative plan which prohibits new billboards throughout the city, but allows one advertising company the right to put up new billboards on the First Marina Arena and allows one property owner the right to share in that revenue. This creates two legislative classifications. The owner and licensees of the First Marina Arena make up one classification. The other classification contains everyone else.

> Forbidding new billboards everywhere in the City, while at the same time allowing billboards to go up on a city owned sports arena violates the equal protection clause . . . .

Amended Compl., ¶¶ 46, 48. The City contends that in so alleging, plaintiffs have failed to state a cognizable equal protection claim.[3] I agree.

### III.

■ "[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). When "governmental action [does] not burden a fundamental right or employ a suspect classification, the pertinent question for determining whether the governmental action violated the Equal Protection Clause is whether the . . . officials reasonably could have believed that the action was rationally related to a legiti-

mate governmental interest." *Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 290 (4th Cir.1998). The legislators' actual motivation is irrelevant. *Id.; accord United States v. O'Brien*, 391 U.S. 367, 383–84, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). As the Supreme Court held in *Beach Communications, Inc.*:

> [T]hose attacking the rationality of the legislative classification have the burden "to negative every conceivable basis which might support it." Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.

508 U.S. at 315, 113 S.Ct. 2096 (internal quotations and citations omitted; emphasis added); *accord Town of Front Royal*, 135 F.3d at 290.

■ The Fourth Circuit has reiterated the settled principle that

> As a general proposition, legislation will be sustained if the classification utilized by the statute is "rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Thus, when social or economic legislation is involved, the states are permitted wide latitude in adopting classifications to further legitimate governmental purposes.

---

**3.** The City also contends that plaintiffs lack standing to mount an equal protection challenge inasmuch as, even if they are successful, they will not obtain the right to install billboards on their properties in the downtown business district. *See infra* n. 4. To be sure, however, although the plaintiffs have not made the argument explicitly, they seem to contend that they rest their challenge to the arena billboards on twin disparate economic consequences to them: (1) reduced revenue from the loss of income from foregone billboards on their own buildings, as well as (2) reduced rental income as a result of market forces disapproving of the arena billboards' nearby presence. In the view I take of the case, it is unnecessary for me to address plaintiffs' standing.

*Sylvia Dev. Corp. v. Calvert County, Maryland,* 48 F.3d 810, 820 (4th Cir.1995) (citation omitted). Furthermore, the mere fact that one is treated differently than someone who is similarly situated is not sufficient to run afoul of the equal protection clause. As the Fourth Circuit explained:

> If disparate treatment alone were sufficient to warrant a constitutional remedy, then every blunder by a local authority, in which the authority erroneously or mistakenly treats an individual differently than it treats another who is similarly situated, would rise to the level of a federal constitutional claim.

*Id.* at 825.

■ Measured against the above standards, it is clear that the City's decision to authorize the placement of billboards on the downtown sports arena does not violate the equal protection clause of the Fourteenth Amendment. Notably, plaintiffs do not attack the billboard moratorium. Rather, *the essence of their challenge is to the limited nature of the exceptions* made by the City so as to allow the installation of billboards on the sports arena in the downtown business district.[4] But this complaint lacks merit.

A reasonable member of the City Council could reasonably conclude that permitting billboards on the arena was consistent with the existing placement of commercial advertisements in and about two nearby sports stadia owned by the state of Maryland and therefore not subject to City regulation. Likewise, members of the City Council could reasonably conclude that the presence of such advertising on sports venues in other cities militated in favor of a limited exception to the overall ban on billboards within the City of Baltimore. Furthermore, members of the City Council would act reasonably to conclude that allowing billboards on the exterior of the arena was consistent with the city-wide exception already in place for signs (admittedly much smaller signs) allowed on bus shelters scattered throughout the city. Finally, members of the City Council might reasonably conclude, as the City Council did conclude, that the requirement that a one-for-one reduction in billboards from outside the downtown business district owned by the entity contracted to install the downtown billboards on the arena was a sensible and rational condition to the authority granted for the downtown installation. Thus, the exception to the city-wide billboard moratorium which permits the installation of billboards on the arena in the downtown business district is rationally related to the overarching concern for the general health and welfare which animated the imposition of the moratorium on billboards in the first place.

Plaintiffs offer little of substance to counter the above analysis. Although they mention in passing that commercial speech is affected with a First Amendment interest and that some zoning regulations touching and concerning fundamental rights require the application of "strict scrutiny" review, they do so *only* in passing. They do not remotely suggest that they have asserted a First Amendment or other fundamental right in this case and they explicitly concede that "rational basis" is the appropriate standard of review. Next, they contend that the City's motion must be treated as a motion for summary judgment and that disputes of fact exist as to the governmental interests involved in

4. Indeed, the amended complaint does not seek "inclusive" relief, i.e., an order declaring the city-wide moratorium on billboards unenforceable. Instead, plaintiffs have carefully limited their request to an order declaring void the ordinance that created the exception to the moratorium.

this case and the "fit" between the ostensible legitimate interests of the City and the means chosen to achieve those ends. But I need not and have not converted the City's motion into a motion for summary judgment, and the suggestion that these so-called disputes of fact are "material" is incorrect as a matter of law. *Cf. Beach Communications, Inc.,* 508 U.S. at 315, 113 S.Ct. 2096 ("[B]ecause we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature."); *accord Town of Front Royal,* 135 F.3d at 290. Thus, plaintiffs' counsel's affidavit, submitted pursuant to Fed. R.Civ.P. 56(f), in which he seeks leave to conduct discovery on such issues, is quite beside the point.

### IV.

■ For the reasons discussed above, I shall grant the City's motion to dismiss and enter judgment in favor of defendants as to count five of the amended complaint, the Fourteenth Amendment equal protection claim. As complete diversity of citizenship is lacking in this case, I shall decline to exercise supplemental jurisdiction and shall dismiss without prejudice the remaining, state law claims. 28 U.S.C. § 1367(c)(3); *see generally Andrews v. Anne Arundel County, Md.,* 931 F.Supp. 1255, 1267–68 (D.Md.1996), *aff'd,* 114 F.3d 1175, 1997 WL 321573 (4th Cir.1997) (table), *cert. denied,* 522 U.S. 1015, 118 S.Ct. 600, 139 L.Ed.2d 489 (1997). A separate order follows.