941 A.2d 1052

MBC REALTY, LLC, et al.

v.

The MAYOR AND CITY COUNCIL OF BALTIMORE, et al.

No. 48, Sept. Term, 2007.

Court of Appeals of Maryland.

Feb. 13, 2008.

M. Albert Figinski (Law Offices of Peter G. Angelos, James E. Carbine, James E. Carbine, P.C., Baltimore), all on brief, for petitioners.

George A. Nilson (Sandra R. Gutman, Adam S. Levine, Baltimore), on brief, for petitioners.

George A. Nilson (Sandra R. Gutman, Adam S. Levine, Baltimore), on brief, Herbert Better (P. Andrew Torrez, Zuckerman Spaeder, LLP, Baltimore), on brief, for respondents.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, specially assigned) and DALE R. CATHELL (Retired, specially assigned), JJ.

HARRELL, J.

I.

At the center of this dispute are three pieces of municipal legislation: one amending the text of an urban renewal plan; one a zoning ordinance text amendment permitting, with the grant of a conditional use, general outdoor advertising signs (billboards) on publicly-owned stadia or arenas in Baltimore City's B–5 zone; and, the last granting such a conditional use for 14 billboards on the exterior of the First Mariner Arena (the "Arena"). A number of property owners adjacent to the Arena, aggrieved at the result of this legislative trifecta, sought to have the Circuit Court for Baltimore City invalidate the legislation. The Circuit Court, largely on procedural/jurisdictional grounds, rebuffed these efforts. We issued a writ of certiorari to consider what modalities of legal process may be available to obtain judicial scrutiny of these enactments by the Mayor and City Council. Apropos of the legal analysis required in the present case, we recall words from an opinion in a predecessor land use case emanating from Baltimore City, "[e]ngaging in this inquiry, we do not write on an entirely clean appellate slate." *Md. Overpak Corp. v. Mayor & City Council of Balt.*, 395 Md. 16, 21, 909 A.2d 235, 238 (2006).

II.

A. *The Undisputed Facts*

Petitioners in this matter are MBC Realty, LLC, and various other landowners with interests in office and residential buildings in the downtown area of Baltimore surrounding the Arena. Respondents are the Mayor and City Council of Baltimore City ("the city" or "the City Council"), owner of the former Baltimore Civic Center Arena, now known as the First Mariner Arena, and businesses that operate the Arena and associated activities, Clear Channel Outdoor, Inc., Arena Ventures, LLC, and SMG, Inc.

The seeds of the current dispute actually were sown with the introduction of Council Bill 99–0002 by the City Council

President and the twelve council members on 9 December 1999. Commonly called the Baltimore City "Billboard Moratorium," enacted as Ordinance 00–0001, this legislation amounted to a prohibition on new billboards in the City.[1] The purpose of Ordinance 00–0001 was described as

> establishing a general prohibition on the issuance of permits and the construction of general advertising signs; providing standards for changes for nonconforming general advertising signs; providing that certain applications for new general advertising signs may not be granted; ... and generally relating to the regulation of general advertising signs.

The Ordinance recited as justification for the prohibition that billboards "constitute a separate and distinct use of the land on which they are placed and affect the use of adjacent streets, sidewalks," and other public spaces, that the "unregulated construction, placement, and display of signs constitute a public nuisance," that the signs "endanger the public safety by distracting the attention of drivers from the roadway and may otherwise endanger the public health, safety, and welfare," and that billboards could "result in harm to the welfare of the City by creating visible clutter and blight and by promoting a negative aesthetic impact...." Council Bill 99–0002 (1999). Prior to enactment of the ban, billboards were permitted by the Zoning Article of the City Code with the grant of a conditional use, subject to some limitations, in certain business and industrial districts in the City.

On 23 September 2002, the City Council President introduced Council Bill 02–0898, proposing to enact Ordinance 03–513, at the request of the "Administration (Baltimore Development Corporation[2])." The bill proposed to amend the text of the Urban Renewal Plan for the Market Center Area of

---

1. The prohibition was generally applicable throughout the City and was open-ended in duration.

2. In *City of Baltimore Development Corporation v. Carmel Realty Associates*, 395 Md. 299, 336, 910 A.2d 406, 428 (2006), we described the Baltimore Development Corporation as a public body and an instrumentality of the municipal government of Baltimore City.

Baltimore City to allow billboards approved by ordinance as a conditional use on publicly-owned stadia and arenas. On the same day, the City Council President introduced Council Bill 02–0899, to enact Ordinance 03–514, at the request of the "Administration (Baltimore Development Corporation)." This proposed bill would amend the text of the Baltimore City Code, Zoning Article, to authorize in the downtown Baltimore business district zoning classification "B–5," in which the Arena is located, as a conditional use requiring approval by ordinance, billboards on publicly-owned stadia and arenas. Concluding the trifecta of legislative initiatives, that same day the City Council President introduced Council Bill 02–0900, to enact Ordinance 03–515, at the request of the "Administration (Baltimore Development Corporation)." This proposal would grant a conditional use for 14 billboards on the exterior of the Arena. Concurrent with the introduction of the three bills, a statement of intent to seek a conditional use allowing bill-boards on the exterior of the Arena was executed by the City.[3]

The three companion Council Bills were considered by the City Planning Commission, Department of Planning, on 9 January 2003. A memorandum, dated 9 January 2003, sum-marized that meeting. The Commission recommended that Council Bill 02–0900 be amended to include certain design standards and, as amended, recommended passage by the City Council. A Planning Commission Staff Report, also dated 9 January 2003, addressed the three bills and recommended their approval. The Staff Report listed the applicants for the legislation and conditional use as "The Administration (Balti-more Development Corporation) and Ed Hale, First Mariner Arena." In its "Conformity to Plans" section, the Staff Re-port stated, "City Council Bill # 02–0898 amended the Market Center Urban Renewal Plan, the comprehensive plan for this area. With the approval of this amendment, this project is in conformance with the comprehensive plan for this area." In

---

**3.** The Statement of Intent lists as the applicant for the specific condi-tional use on the exterior of the Arena the Mayor and City Council of Baltimore. M.J. Brodie, President of the Baltimore Development Cor-poration, signed on behalf of the Mayor and City Council of Baltimore.

the "Analysis" section, the Staff Report noted, "[t]hese three bills work in concert to allow general advertising signs on the Baltimore Area [sic]. Ed Hale, owner of the Baltimore Blast [professional, indoor soccer team] and lead tenant in the Arena, is interested in providing general advertising on the exterior of the Arena." Scant mention of the 2000 Citywide prohibition on new billboards appears in the Staff Report. What little reference there was, however, suggests the basis of a bargain with a component of a relevant political constituency for the exception proposed by the 2002 bills to the 2000 billboard ban:

> Subsequent to the introduction of [City Council Bill 02–0899], the Citizens Planning and Housing Association (CPHA), who played a lead role in establishing the prohibition on new general advertising signs, requested that the City require removal of other general advertising signs if these new signs are to be approved. The goal is to insure that City Council Bill # 02–0899 is in keeping with the goals and objectives of the prohibition on new general advertising signs.

The Staff Report recommended that the City Council follow this suggestion and demand removal of one existing sign elsewhere in the City for every sign approved for the Arena. This feature later was included in the enacted ordinances.

On 19 February 2003, hearings before the Land Use and Planning Committee of the Baltimore City Council took place. The record does not include transcripts from this hearing. The record does contain ten pages of testimony challenging the three bills as "such bad policy that there is virtually no chance that they could withstand a court challenge to their validity." This testimony emanated from Petitioners and warned the City Council that passage of the bills would constitute illegal spot zoning, contract zoning, and conditional zoning. The testimony also asserted that passage of the bills would deny Petitioners equal protection of the laws.

On 24 March 2003, the City Council adopted Ordinances 03–513 [4] and 03–514.[5] It adopted Ordinance 03–515 [6] on 7 April

---

4. Ordinance 03–513 took effect upon enactment.

2003. The Mayor signed the three Ordinances into law on 9 April 2003. The Ordinances work together to allow and approve as a conditional use billboards to be placed on the Arena. Ordinance 03–513 amended the text of the Urban Renewal Plan for Market Center to allow billboards on publicly-owned stadia or arenas if approved by ordinance as a conditional use. Ordinance 03–514 permits billboards on the Arena, if approved as a conditional use.[7] It requires removal of one billboard from elsewhere in the City for each such sign allowed on the Arena. The Ordinance is codified at Baltimore City Code, Zoning Article, §§ 6–609, 14–349. Finally, Ordinance 03–515 approved, as a conditional use on a specific site, the erection of 14 billboards on the exterior of the Arena, if 14 billboards are removed by Clear Channel elsewhere in the City.

### B. The Procedural History

Petitioners challenged the three Ordinances initially on 14 April 2003 by filing a Petition for Judicial Review, pursuant to Maryland Code, Article 66B, § 2.09(a),[8] in the Circuit Court for Baltimore City. The precise objects of disaffection appeared to be the text amendment to the Baltimore City Code, Zoning Article, allowing billboards as a conditional use for

---

**5.** Ordinance 03–514 took effect 30 days after enactment.

**6.** Ordinance 03–515 took effect 30 days after enactment.

**7.** As noted earlier, this Ordinance allows billboards on publicly-owned stadia and arenas in the B–5 zone in Baltimore City. Three such entities existed in the B–5 zone at the time of enactment of the pertinent legislation, the Arena, Camden Yards, and the M & T Bank Stadium. The latter two are owned by the State of Maryland and thus are not subject to zoning regulations by Baltimore City. *See Mayor & City Council of Balt. v. State*, 281 Md. 217, 223–24, 378 A.2d, 1326, 1329–30 (1977). The legislation thus had the effect of permitting and authorizing, as a conditional use, billboards on the Arena only.

**8.** "An appeal to the Circuit Court of Baltimore City may be filed jointly or severally by any person, taxpayer, or officer, department, board, or bureau of the City aggrieved by ... a zoning action by the City Council." Compliance with Title 7, Chapter 200 of the Maryland Rules is required for such an action.

stadia and arenas in the B–5 zone and the approval of the conditional use allowing signs on the Arena, both actions characterized by Petitioners as "zoning actions" under § 2.09(a). Petitioners alleged that: the Ordinances were beyond the scope of authority granted to Baltimore City by the General Assembly; the Ordinances illegally established a conditional use through piecemeal zoning; the Ordinances violated the "change-mistake" requirement for a change made subsequent to a comprehensive zoning; the Ordinances constituted illegal spot zoning, conditional zoning, and contract zoning; the City's actions were proprietary, rather than governmental (and thus subject to zoning regulation); and, finally, the Ordinances denied Petitioners the equal protection of the law under the Fourteenth Amendment to the United States Constitution.

Respondents moved to dismiss the judicial review action, arguing that the Ordinances could not be challenged by way of judicial review because they were not "zoning actions" within the meaning of § 2.09(a). The Circuit Court, on 18 August 2003, agreed with Respondents and dismissed the judicial review action. That judgment was appealed. While the appeal was pending before the Court of Special Appeals, Petitioners filed a Petition for Writ of Certiorari with this Court, which was denied. *MBC Realty, LLC v. Baltimore,* 380 Md. 618, 846 A.2d 402 (2004). The Court of Special Appeals, in deciding the appeal, affirmed the Circuit Court. *MBC Realty, LLC v. Mayor & City Council of Balt.,* 160 Md.App. 376, 864 A.2d 218 (2004) (hereinafter *MBC Realty I).* The intermediate appellate court principally relied on *Board of County Commissioners of Carroll County v. Stephans,* 286 Md. 384, 408 A.2d 1017 (1979) in reaching that result. It concluded that the actions taken by the Mayor and City Council of Baltimore did not work a zoning reclassification such that a "zoning action" had occurred, as defined in *Stephans. MBC Realty I,* 160 Md.App. at 387–90, 864 A.2d at 224–26. Near the end of its opinion, the court stated that,

> at or about the same time that appellants filed a petition for
> judicial review in circuit court, they filed a separate suit in

circuit court, invoking the court's general jurisdiction. At the request of appellees, the case was removed to the United States District Court for the District of Maryland, based on an allegation that the ordinances violated the equal protection clause of the Fourteenth Amendment. Appellees filed a motion to stay and appellants filed a motion to remand. Both motions were denied, and no further proceedings have occurred. There is nothing in this opinion that prevents appellants from pursuing the questions of illegality, not properly before us in this case, in the separate suit.

*MBC Realty I*, 160 Md.App. at 390, 864 A.2d at 226.

Indeed, hedging their bets against the possibility that the City's motion to dismiss the judicial review action might find favor, Petitioners had filed on 30 June 2003 a declaratory judgment action (alluded to by the Court of Special Appeals in *MBC Realty I)* under Maryland's Declaratory Judgment Act, Maryland Code, Courts and Judicial Proceedings Article, §§ 3–401–3–415. Thus, Petitioners alternatively and concurrent with their judicial review action sought declaratory and injunctive relief from the Ordinances by invoking the Circuit Court's general jurisdiction. They advanced in the declaratory/injunctive action essentially the same allegations of illegality previously advanced in the action for judicial review.

Respondents removed the declaratory/injunction action to the U.S. District Court for the District of Maryland on 5 August 2003. Shortly thereafter, Petitioners added to their declaratory/injunctive action an equal protection claim under State law and sought to remand all claims, save the federal constitutional claim, to the Circuit Court. The federal court, rather than ruling on the motion immediately, chose to await the outcome of *MBC Realty I* in the Court of Special Appeals. The parties stipulated to a stay of the federal proceedings to abide the outcome of *MBC Realty I*.

On 12 January 2005, the federal court ruled on the matters before it. It dismissed Petitioners' federal equal protection claim, concluding that the factual averments in Petitioners'

complaint did not support a claim upon which relief could be granted. The court remanded Petitioners' state law claims to the Circuit Court, noting "[a]s complete diversity of citizenship is lacking in this case, I shall decline to exercise supplemental jurisdiction and shall dismiss without prejudice the remaining, state law claims." *MBC Realty, LLC v. Mayor & City Council of Balt.*, 351 F.Supp.2d 420, 425 (D.Md.2005).

Returning to the Circuit Court, Petitioners amended their Declaratory Judgment Complaint, jettisoning the state equal protection claim, retaining their other claims, and asserting that Ordinance 03–513, the text amendment to the Urban Renewal Plan, and Ordinance 03–515, the grant of the conditional use for the Arena, were "legally meaningless" because Ordinance 03–514 was illegal and, if that assertion was meritorious, the other ordinances became ineffective insofar as Petitioners' interests were concerned. Of course, at this point in time, the dismissal of Petitioners' judicial review action had been litigated conclusively in *MBC Realty I.*

Respondents sought dismissal of the amended complaint for declaratory and injunctive relief on the grounds that "[t]he complaint [did] not state a claim upon which declaratory relief [could] be granted because the exclusive means of challenging the legality of the Ordinances [was] via a section 2.09 petition for judicial review." Respondents further reasoned that "[t]he decision in *MBC Realty I* precludes the state law claims because there can be no illegal piecemeal, spot, or contract zoning unless the Ordinances changed the zoning classification of the Arena, and the issue of whether these Ordinances constituted a zoning reclassification was fully and finally decided in favor of the City by [the] decision in *MBC Realty I.*" The Circuit Court, on 3 August 2005, dismissed Petitioners' Amended Complaint, with prejudice, based on Respondents' arguments. Petitioners appealed once more to the Court of Special Appeals.

While that appeal was pending before the Court of Special Appeals, a panel of that court, in *Armstrong v. Mayor & City Council of Balt.*, 169 Md.App. 655, 906 A.2d 415 (2006), held

that an ordinance enacted by the Mayor and City Council of Baltimore granting a conditional use constituted a "zoning action" for the purposes of § 2.09(a). Soon thereafter, in *Maryland Overpak*, 395 Md. 16, 909 A.2d 235, we agreed with the analysis in *Armstrong* and articulated an analytical paradigm by which courts should determine whether a discrete action is reviewable under § 2.09(a) as a "zoning action." *Maryland Overpak* and *Armstrong* had the effect of eviscerating the precedential weight of *MBC Realty I*. Unfortunately, Petitioners' judicial review action in the present litigation continuum was long deceased.

The Court of Special Appeals, in the appeal then before it, was placed in a unique and guilt-ridden situation. In its unreported opinion *(MBC Realty II)*, the conundrum was framed thusly:

> [w]e agree with the circuit court and [Respondents] that section 2.09 provides the exclusive remedy for these illegal spot zoning challenges to the Ordinances, so that the circuit court did not have subject matter jurisdiction to entertain a declaratory judgment action limited to such challenges. Nevertheless, we also agree with [Petitioners] that our decision in *MBC Realty I* prevented them from challenging the Ordinances via a petition for judicial review under section 2.09(a)(1)(ii).

The opinion explained that *MBC Realty I* rested on "a premise concerning the scope of section 2.09 that has been undermined by recent decisions of this Court and the Court of Appeals" (referring to *Armstrong* and *Maryland Overpak* ).

The intermediate appellate court, after recounting the facts and reasoning in *Armstrong* and *Maryland Overpak*, expressed its conviction that Petitioners were entitled to challenge Ordinance 03–515 in a judicial review action as a "zoning action" under § 2.09(a). The court noted that in *Maryland Overpak*, where an amendment to a previously approved development plan for a planned unit development (PUD) zone in Baltimore City was found to constitute a "zoning action," we analogized the process in Baltimore City by which a PUD is

approved initially or amended thereafter in a substantive way to that by which a conditional use is approved. The intermediate appellate court, focusing on that analogy, concluded in *MBC Realty II* that, "[a]lthough the Court of Appeals did not expressly address" in *Maryland Overpak* whether the grant of a conditional use constitutes a "zoning action" for the purpose of § 2.09(a), "the answer to that question is patent."

The Court of Special Appeals considered also whether a declaratory judgment action might be appropriate under the circumstances. The court stated, "[w] e agree with the circuit court and the City that the legislative history of section 2.09 shows that this statute was intended to create an exclusive remedy for appeals from zoning actions.... Thus, by the [circuit] court's analysis, appellants were stuck in a Catch–22." As a result, the court felt it just, under the circumstances, to sculpt special relief so that Petitioners might have their "day in court" on the merits of their allegations. The Court of Special Appeals concluded

> it is ... justified to hold that the jurisdictional decision in *MBC Realty I* is not a bar to appellants' present suit now proceeding as a section 2.09 appeal. It would be manifestly unfair to preclude appellants from pursuing such an appeal in this action, because that is precisely the type of action they timely filed in *MBC Realty I.* Relief from the judgment entered by the circuit court in this case, which explicitly enforces our nullified decision in *MBC Realty I,* is justified.
>
> . . . .
>
> In these circumstances, we shall exercise our discretionary authority to afford appellants an opportunity to have their "day in court." ... Permitting appellants to amend their complaint in this action [for declaratory and injunctive relief] by changing the nature of the action to a petition for judicial review under section 2.09, will serve the interests of justice and will not require the City to defend any new claims.... Accordingly, we shall vacate the judgment dismissing appellants' declaratory judgment action with prejudice, and remand with instructions that appellants be given leave to amend their complaint to couch it as a petition for

judicial review in accordance with section 2.09 . . ., and that such a petition shall be treated as timely filed . . . on remand.

Thus, the court effectively directed that the clock should be turned backwards and, as if *MBC Realty I* had never occurred, Petitioners and Respondents start anew at the beginning with Petitioners legal challenges framed in a petition for judicial review action.

Petitioners filed a Motion for Reconsideration, Clarification, or Other Relief as to *MBC Realty II*. Specifically, they contended that the court's ruling was unclear as to whether their challenges to the three Ordinances now must proceed only as a § 2.09(a) judicial review action. Petitioners' basis for their motion was that the analysis in the opinion focused exclusively on their challenges to Ordinance 03–515 in reaching the conclusion that their challenges were to a "zoning action," for which a special statutory remedy—a judicial review action—was provided. The motion was denied.

We granted Petitioners' petition for a writ of certiorari (400 Md. 647, 929 A.2d 889 (2007)) to consider the following questions: 1) whether the Court of Special Appeals erred when it ruled, in *MBC Realty II*, that Article 66B, section 2.09(a) of the Maryland Code, provides the exclusive remedy and source of subject matter jurisdiction for legal challenges to the Ordinances so that the request for declaratory relief challenging the enactment of the conditional use text amendment (Ordinance 03–514) could not proceed, and 2) whether the trial court on remand could hear a challenge to the validity of a conditional use text amendment in a judicial review action.

## III.

For a time in the interminable life of this litigation, Petitioners maintained concurrent actions under perceived alternative jurisdictional options. They initially filed in the Circuit Court a petition for judicial review under Maryland Code, Article 66B, § 2.09(a), and later joined that, asserting essentially the same claims as in the judicial review action, with an action for

declaratory judgment/injunctive relief under the Maryland Declaratory Judgment Act, Maryland Code, Courts and Judicial Proceedings Article, § 3–401–3–415. *See Armstrong,* 169 Md.App. at 678, 906 A.2d at 428 ("When uncertain, practitioners sometimes file two actions, one seeking statutory review and the other seeking non-statutory review, because if they file one action and are wrong, a court may not treat the action as if it had asserted the proper basis for review.").[9]

The Declaratory Judgment Act supplies jurisdiction for a circuit court to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Maryland Code, Courts and Judicial Proceedings Article, § 3–403(a). Specifically, "[a]ny person ... whose rights ... are affected by a ... municipal ordinance ... may have determined any question of construction or validity arising under the ... ordinance ... and obtain a declaration of rights, status, or other legal relations under it." *Id.* § 3–406. A circuit court may grant declaratory relief if it will "terminate the uncertainty or controversy giving rise to the proceeding" where an actual or imminent controversy exists provided that no other statute provides a special form of remedy for a specific type of case. *Id.* § 3–409. In that case, "that statutory remedy shall be followed in lieu of a proceeding" under the Declaratory Judgment Act unless constitutional issues dictate that declaratory relief is appropriate before administrative relief is exhausted. *Id.; see Anderson House, LLC v. Mayor & City Council of Rockville,* 402 Md. 689, 703-13, 939 A.2d 116, 125-30 (2008) (discussing alternate jurisdictional forms of action by which a plaintiff may seek judicial scrutiny of zoning actions and other types of land use actions, both quasi-judicial and legislative in nature); *Sprenger v. Pub. Serv. Comm'n,* 400 Md. 1, 23–24, 926 A.2d 238, 251 (2007) ("It is well settled

---

9. These two actions were pending in the Circuit Court from 30 June 2003 until 5 August 2003 when Respondents removed the declaratory/injunctive action to the federal district court. The Circuit Court dismissed the judicial review action on 18 August 2003.

in Maryland that when there is a special statutory remedy for a specific type of case and that remedy is intended to be exclusive or primary, a party may not circumvent those special statutory proceedings by a declaratory judgment action.") (internal citations omitted); *Tanner v. McKeldin,* 202 Md. 569, 577, 97 A.2d 449, 453 (1953) ("[W]here a statute provides a special form of remedy, the plaintiff should use that form rather than some other, although a constitutional issue may be decided in a suit for an injunction or a declaratory judgment or decree before the time arrives for using the statutory remedy, provided that there is no danger of by-passing the administrative agency.").

In Baltimore City, a special statutory remedy exists for certain types of land use decisions under Maryland Code, Article 66B, § 2.09, "Appeals to courts." Section 2.09(a) provides that "[a]n appeal to the Circuit Court of Baltimore City may be filed jointly or severally by any person . . . aggrieved by . . . a zoning action by the City Council." [10] *Maryland Overpak* and *Armstrong* revisited and redirected the debate over what is a "zoning action" for purposes of § 2.09, supplying an analytical template for determining whether a discrete land use decision or action is a "zoning action." As the Court of Special Appeals properly noted in *MBC Realty II,* we compared in *Maryland Overpak* the process by which a planned unit development (PUD) is granted or an initial grant is substantially amended in Baltimore City to that by which the Mayor and City Council of Baltimore City grant a conditional use. *Maryland Overpak,* 395 Md. at 29–31, 909 A.2d at

---

10. Section 2.09(f) provides that "[i]n addition to the appeal provided in this section, the Mayor and City Council of Baltimore may allow an appeal to the Circuit Court for Baltimore City of any matter arising under planning and zoning laws of the City of Baltimore." Baltimore City, however, has not availed itself of this opportunity to enact a broader appeal right than contemplated by § 2.09(a). *Cf. Anderson House,* 402 Md. 689, 705-06, 939 A.2d 116, 125-26 (2008) (noting that the Mayor and City Council of Rockville, acting pursuant to Article 66B, § 4.08(f) an analogous provision to § 2.09(f)), enacted § 25–100 of the

243–44. The present case presents an opportunity to expand somewhat our analysis explained there.

It appears that, in Baltimore City, conditional uses may be approved through two possible processes. The Baltimore City Code, Zoning Article, addresses conditional uses at Title 14, Conditional Uses, and Title 16, Legislative Authorizations and Amendments. Subtitle 1 of Title 14 supplies an overview and requirements for conditional uses generally. Section 14–102 explains that conditional uses may be approved by either the Board of Municipal and Zoning Appeals of Baltimore City (the "Board"), by written findings of fact and conclusions of law, *or* the Mayor and City Council, by ordinance.[11] Whether it is the former or the latter path that a particular conditional use proposal must follow is determined by the regulations for each zoning district. For example, § 6–608 of the Baltimore City Zoning Article, applicable to the B–5 business district, specifies which conditional uses the Board must approve, and § 6–609 specifies which conditional uses the Mayor and City Council must approve. Requests for outdoor advertising signs on public stadia and arenas in the B–5 business district must be approved by the Mayor and City Council. Baltimore City Code, Zoning Article, § 6–609.

At § 14–103, the City Code notes that either the Board or City Council, when acting on a conditional use request committed to its respective attention, may place "conditions, restrictions, or limitations" on the "establishment, location, construction, maintenance, and operation" of the conditional use

---

Zoning Article of the Rockville City Code granting a right of judicial review broader than that under § 4.08(a) (analogous to § 2.09(a)).

**11.** *See also* Baltimore City Code, Zoning Article, § 3–103, Conditional Uses

(a) *Nature of use.* A conditional use is a use that:
(1) may be authorized by the Board or by ordinance as a special exception under State Code Article 66B; and
(2) is subject to review and approval and to the imposition of conditions and restrictions under the provisions of this article.
(b) *Applicability to district.* Conditional uses for a district are as specified in this article for that district.
(c) *Major categories limited to itemized uses.* Wherever a major category that lists specific uses is named as a conditional use for a district, only the specific uses listed are conditional uses.

in granting it. If the Board elects to impose such "conditions, restrictions, or limitations," they must be included in the Board's written decision approving the conditional use. *Id.* § 14–103. If the City Council imposes limitations or restrictions, they must be set forth in the ordinance approving the conditional use. *Id.*

Subtitle 2 of Title 14 of the Zoning Article is further divided into Parts I and II. Part I sets out procedures and general considerations for conditional uses committed to Board approval and Part II for those addressed to Mayor and City Council approval, the latter being the path Ordinance 03–515 followed in the present case. Part II has but one section, 14–208, which states "[b]ills proposing conditional uses are governed by the procedures in Title 16" of the Zoning Article.[12]

Title 16 of the Zoning Article, entitled "Legislative Authorizations and Amendments," applies expressly only to the Mayor and City Council when considering an ordinance proposing a conditional use. A proper understanding of this Title begins with Subtitle 1, which provides its definitions and scope. Section 16–101 defines two terms pertinent to the present case. First, "zoning legislation" is defined, in part, as "any legislative authorization." *Id.* § 16–101(d). Second, a "legislative authorization" is defined as "any ordinance that approves, authorizes, or amends a prior approval or authorization relating to a specific property, including . . . a conditional use. . . ." *Id.* § 16–101(b).

Title 16, Subtitle 2, sets out special requirements for legislative authorizations, including a legislative authorization for a conditional use. Specifically, on introduction by bill of an

---

12. Subtitle 3 of Title 14 sets out additional considerations for certain conditional uses. At Part II, additional considerations for Board approval, and, at Part III, additional considerations for grant of a conditional use by ordinance, are set forth. Ordinance 03–514 in the present case amended § 14–349. That amendment implemented the requirement of Ordinance 03–514 that bills introduced to approve a conditional use for advertising signs on a stadium or arena must be accompanied by a plan for removal of at least one advertising sign elsewhere in the City.

ordinance proposing the grant of a conditional use, the applicant [13] must submit a written statement informing the City Council, certain agencies, and the public of the changes sought and the intended uses. *Id.* § 16–202(b). This statement must include a summary of the changes to the property that the applicant seeks, a description of the intended uses for the property, the date the property was purchased and land record reference, a description of any contracts contingent on the proposed legislative authorization (with party contact information), and the identity of any principals for whom the applicant is acting as an agent, including the names of the majority stockholders of any corporation. *Id.* Next, the applicant for legislative authorization of a conditional use is made responsible for posting a public notice of the request on the property for which the legislative authorization is sought. *Id.* § 16–203. This public notice is prepared and supplied by the Director of Legislative Reference for Baltimore City. *Id.*

In Subtitle 3 of Title 16 are found required referrals for agency and departmental comments and recommendations that must be made before the City Council may act on a conditional use proposed via ordinance. The Board of Municipal and Zoning Appeals, Planning Commission, [14] and other relevant agencies must be given the opportunity (they have 100 days from referral to tender any comments) to provide the City Council with written reports and recommendations. *Id.* § § 16–301, 16–302. Those recommendations are to take into

---

**13.** This Section does not make express, as does § 14–201 for conditional use approvals sought from the Board of Municipal and Zoning Appeals by individual application, that the applicant for an ordinance approving a conditional use must be filed by, or with the consent of, the property owner.

**14.** We were informed at oral argument that a representative or representatives of Petitioners attended and participated in the meeting held by the Planning Commission on 9 January 2003 on the proposed bills; however, there is no record, nor were we advised, of what procedural rules may have applied to this meeting, such as rights of cross-examination of witnesses, the possibility of rulings on evidentiary objections, and the like.

account 13 considerations enumerated in Title 14 at § 14–205.[15] *Id.* § 16–304.

Subtitle 4 of Title 16 sets out the procedural oblations that must be observed by the Council in acting on any bill proposing the grant of a conditional use. Before the City Council may place a bill proposing a conditional use grant on its second reading calender, it must receive the recommendations of the Board and Planning Commission, unless those agencies fail to submit a report. *Id.* §§ 16–302, 16–401. Additionally, the bill must be considered by the City Council at a public hearing during which the general public has an opportunity to be heard and all agency and departmental reports are read.[16]

---

**15.** These considerations are

(1) the nature of the proposed site, including its size and shape and the proposed size, shape, and arrangement of structures;

(2) the resulting traffic patterns and adequacy of proposed off-street parking and loading;

(3) the nature of the surrounding area and the extent to which the proposed use might impair its present and future development;

(4) the proximity of dwellings, churches, schools, public structures, and other places of public gathering;

(5) accessibility of the premises for fire and police protection;

(6) accessibility of light and air to the premises and to the property in the vicinity;

(7) the type and location of adequate utilities, access roads, drainage, and other necessary facilities that have been or will be provided;

(8) the preservation of cultural and historic landmarks;

(9) the provisions of the City Master Plan;

(10) the provisions of any applicable Urban Renewal Plan;

(11) all applicable standards and requirements of this article;

(12) the intent and purpose stated in § 1–401 {"Purposes of article"} of this article; and

(13) any other matters considered to be in the interest of the general welfare.

**16.** At the applicant's expense, the general public receives notice of the time, place, and subject of the hearing on a conditional use bill no later than 15 days in advance of the hearing according to options set out in Baltimore City Code, Zoning Article, § 16–402(b)(1) & (2):

(b) *Public notice—General.* Notice of the time, place, and subject of the hearing must be given by each of the following methods, as applicable:

(1) for all zoning legislation, by publication in a newspaper of general circulation in the City;

*Id.* §§ 16–401, 16–402. If a bill proposing zoning legislation is amended in substance after the initial public hearing, a new public hearing is required. *Id.* § 16–403.

 In *Maryland Overpak,* we supplied the criteria for determining whether an action may be deemed a "zoning action" for purposes of § 2.09(a). 395 Md. at 53, 909 A.2d at 257. The process leading to the final action, which may itself be expressed as a legislative act, must be quasi-judicial in nature, as opposed to purely legislative in nature. *Id.,* 909 A.2d at 257. Indicia of a quasi-judicial process include, a "fact-finding process that entails the holding of a hearing, the receipt of factual and opinion testimony and/or forms of documentary evidence, and a particularized conclusion, based upon delineated statutory standards, for the unique development proposal for the specific parcel or assemblage of land in question." *Id.,* 909 A.2d at 257. A zoning action results where "the [final decision-maker] exercises its discretion in deciding the permissible uses and other characteristics of a specific parcel or assemblage of land upon a deliberation of the unique circumstances of the affected land and its surrounding environs...." *Id.,* 909 A.2d at 257. Where it is found that the final governmental decision-maker engaged in a "zoning action," judicial review of its decision is appropriate under Maryland Code, Article 66B, § 2.09(a), and, thus, a special statutory remedy exists, ordinarily precluding other modes of seeking judicial scrutiny.

Relevant to the present case, it appears that the City Code required the development of a factual record for consideration in analyzing a site-specific, particularized land use proposal, including at least one public hearing. "For a bill proposing any zoning legislation, the committee to which the bill has been referred must conduct a hearing at which: (1) the parties in interest and the general public will have an opportunity to be heard; and (2) all agency reports will be read." Baltimore

---

(2) for any legislative authorization, other than a multi-property rezoning, by posting in a conspicuous place on the property in question

City Code, Zoning Article, § 16–402. The record here does not make clear what procedural rules, such as a right to cross-examination, may have been in place governing the hearing before the Land Use and Planning Committee of the City Council in this case. We note, however, that in *Armstrong*, apparently the record more clearly revealed the type of hearing held before the same committee in a process the same as or analogous to the one traversed by Ordinance 03–515.[17] The Court of Special Appeals noted there that

> the hearing to consider [approval of the conditional use by ordinance] was adjudicative in nature. During the hearing before the Land Use and Planning Committee of the City Council, various members of the community testified regarding the effect of the [grant of the conditional use] on their and nearby properties. Committee members asked [the applicant] to testify as to the economic impact of [allowing the conditional use.] The focus of the hearing was on a single piece of property and the effect of its development on surrounding properties.

*Armstrong*, 169 Md.App. at 670, 906 A.2d at 424.

Further, it seems clear that the City Code calls upon the City Council to exercise its discretion in deciding "the permissible uses and other characteristics of a specific parcel or assemblage of land upon a deliberation of the unique circumstances of the affected land and its surrounding environs." *Maryland Overpak*, 395 Md. at 53, 909 A.2d at 257. We said in *Maryland Overpak*,

> we view "zoning action" in § 2.09 as any act by the Mayor and City Council that (1) decides the use of a specific parcel or assemblage of parcels of land, (2) was initiated by an

---

**17.** The intermediate appellate court in *Armstrong* determined that, in fact, "[t]he City ... treated [the parking lot ordinance at issue] as a conditional use, labeled it as such, and, more importantly, followed the procedures strictly reserved for conditional use bills [committed to the Mayor and Council track]...." *Armstrong*, 169 Md.App. at 672, 906 A.2d at 425. The Court thus concluded that the ordinance at issue "either granted a conditional use or, for practical purposes, should be treated as having granted a conditional use." *Id.*

individual application by a property owner or its representative, (3) was based on fact-finding (from a record containing evidence, usually both pro and con) adduced through governmental agency analysis of the proposal and through a public hearing, and (4) either creates or modifies substantively the governing zoning classification or defines the permissible uses, building and lot sizes, population density, topographical and physical features, and other characteristics of a specific parcel or assemblage of parcels of land by exercising some discretionary judgment after the consideration of the unique circumstances of the affected parcels and buildings.

395 Md. at 50, 909 A.2d at 255.

■■ The grant in this case added the placement of billboards as a permissive use on the Arena, thus deciding a "use of a specific parcel." The act was initiated "by an individual application by a property owner," in this case the City of Baltimore. The grant of this conditional use proceeded after required evidence gathering. The City Code requires that "[f]or a bill proposing the approval or amended approval of a conditional use, the Board and Planning Commission must base their recommendations to the Council on the considerations required by Title 14 {'Conditional Uses'} of this article." § 16–304. Additionally, "[t]he City Council may not place a bill proposing any zoning legislation on its second reading calender until[, unless an agency fails to report,] it has received written reports and recommendations from the Board and the Planning Commission" and, in this case, the Land Use and Planning Committee of the City Council holds a hearing. Baltimore City Code, Zoning Article, § 16–401. The agency and departmental reports, as noted *supra* at 20–21, n. 15, were required to consider numerous site-specific and statutory factors in framing their analysis and recommendations regarding the proposed use.[18] Thus, the conditional use was approved

---

18. We note that, in the instant case and in *Armstrong,* it militates somewhat against a conclusion that a "zoning action" occurred because the Zoning Article does not require specifically that the City

after the City Council considered multiple reports and recommendations from its relevant agencies and departments, framed in terms of the 13 considerations set out at Baltimore City Code, Zoning Article § 14–205, and public comment received at an obligatory public hearing. Such a process, though concluding with a purely legislative act, i.e. the adoption of Ordinance 03–515, suggests that the Mayor and City Council here engaged in a "zoning action" in granting the conditional use, rather than a purely legislative exercise. *Maryland Overpak*, 395 Md. at 53–54, 909 A.2d at 257.

The Court of Special Appeals in this case, thus, correctly concluded that the challenges mounted to Ordinance 03–515 could not proceed under a declaratory/injunction action as a special statutory remedy existed. Maryland Code, Courts and Judicial Proceedings Article, § 3–409; *Anderson House*, 402 Md. 689, 703-05, 939 A.2d 116, 125-26. As the Court of Special Appeals noted, Petitioners were stuck in the switches by the unfortunate timing of the related and unrelated, but relevant,

---

Council make written findings of fact or conclusions of law in accordance with legislative criteria (in granting the conditional use) that are supported by competent and substantial record evidence. Indeed, in both cases (the "conditional use" approval of a parking lot in *Armstrong* and the conditional use approval of outdoor advertising signs here) the Zoning Code describes factors that the Mayor and City Council *may* consider, but in neither case were the City Council's views as to how those considerations are fulfilled on the record before it required to be expressed in the act of approval. *Compare* § 10–504 (setting out requirements *"to permit"* the Mayor and City Council to make delineated considerations) *and* § § 16–304 & 16–402 (describing information gathering procedures that must occur before the Mayor and City Council may make a decision, but not describing findings that the Mayor and City Council must make before taking action) *with* § § 14–204 & 14–205 (describing determinations the Board of Municipal and Zoning Appeals *must make* before approving a conditional use). Were there not apparent satisfaction of the other aspects of the *Maryland Overpak* paradigm here, the absence of this significant characteristic of a traditional quasi-judicial process might auger in favor of a conclusion that the process for approval of a conditional use by the Mayor and City Council was significantly legislative in nature and, thus, not a "zoning action" for purposes of § 2.09(a). The absence of this characteristic in the present case likely has the effect of limiting somewhat the universe of available bases for challenges mounted in a judicial review action.

litigation noted previously. The intermediate appellate court determined it fair and prudent, for this reason, to craft a remedy for review of their grievances as to Ordinance 03–515, returning Petitioners to the position they were in before *MBC Realty I* was litigated finally. The Court of Special Appeals wrote, "[i]f we were to allow the nullified 'no jurisdiction' ruling in *MBC Realty I* to govern the outcome of this case, the authority of the circuit court to decide [A]ppellants' challenges to the Ordinances under section 2.09, which was recognized by the Court of Appeals in *[Maryland] Overpak*, would be negated." The court concluded,

> [p]ermitting appellants to amend their complaint in this action, by changing the nature of the action to a petition for judicial review under section 2.09, will serve the interests of justice and will not require the City to defend any new claims. Accordingly, we shall vacate the judgment dismissing [A]ppellants' declaratory judgment action with prejudice, and remand with instructions that appellants be given leave to amend their complaint to couch it as a petition for judicial review . . . .

■ We agree with the Court of Special Appeals that such a remedy is granted correctly with regard to Petitioners' asserted aggrievement with the enactment of Ordinance 03–515. We conclude, however, that the Court of Special Appeals improperly extended that remedy by apparently compelling Petitioners to raise their challenges to the zoning ordinance text amendment, Ordinance 03–514, in the same judicial review action, rather than in the declaratory/injunction action.[19] Our analysis in the recently decided *Anderson House* case compels a contrary conclusion.

In *Anderson House*, we considered the propriety of legal modalities for review of challenges to a zoning ordinance text

---

19. Petitioners, in their amended complaint, apparently do not seek direct declaratory/injunctive relief as to Ordinance 03–513, the text amendment to the Urban Renewal Plan, arguing instead that if Ordinance 03–514 is illegal, Ordinance 03–513 becomes ineffective or of no consequence to them as a result.

amendment and a comprehensive rezoning. To bolster juris-diction in the circuit court to resolve its claims, Anderson House, LLC, like Petitioners here, filed two "companion" actions, one for judicial review and one for declaratory/injunc-tive relief. *Anderson House*, 402 Md. 689, 703-04, 939 A.2d 116, 124-25. The actions were consolidated in the circuit court and the record in each adopted in the other. *Id.* We said in that case, "[j]urisdiction existed for the Circuit Court to hear and decide the issues raised in the consoldiated cases.... Anderson House assuredly properly invoked it by filing the two actions that were consolidated." *Id.* In considering the jurisdictional basis for review of a zoning ordinance text amendment, we considered the duality of certain grants in the Maryland Code. *Anderson House*, 402 Md. 689, 703-06, 939 A.2d 116, 125-26. Specifically, we noted that the jurisdictional modalities codified at Maryland Code, Article 66B, § 2.09(a) and (f) (specific to Baltimore City) parallel those codified at § 4.08(a) and (f) (applicable in *Anderson House*). *Anderson House*, 402 Md. 689, 710, 939 A.2d 116, 128-29. We observed that "the universe of possible jurisdictional predicates argued for the Circuit Court to consider Anderson House's challenges were Maryland Code, Article 66B, § 4.08(a)[, providing judi-cial review of a 'zoning action,'] or (f)[, providing additional review if a local jurisdiction invokes the power to recognize an action for judicial review beyond that recognized by § 4.08(a),] or the Declaratory Judgment Act." *Anderson House*, 402 Md. 689, 705, 939 A.2d 116, 125-26. Further, relying on *Maryland Overpak*, we resolved that a zoning ordinance text amendment is not a "zoning action" for purposes of judicial review under § 4.08(a). *Id.* We determined that, with regard to the zoning ordinance text amendment, the City of Rockville did not take advantage of the seeming power granted it by § 4.08(f). *Anderson House*, 402 Md. 689, 705-06, 939 A.2d 116, 125-26. We thus concluded that no "special form of remedy" to review the zoning text amendment precluded review under the De-claratory Judgment Act. *Id.; see* Maryland Code, Courts and Judicial Proceedings Article, § 3–409.[20]

Petitioners in the present case also challenge Ordinance 03–514, a zoning ordinance text amendment, in addition to the specific grant of the conditional use accomplished by Ordinance 03–515. For the reasons discussed in *Maryland Overpak*, judicial review of a zoning ordinance text amendment by a circuit court is inappropriate under § 2.09(a) as a "zoning action." 395 Md. at 32, 909 A.2d at 244. Furthermore, Baltimore City "did not employ [its power under § 2.09(f) ] to grant to the Circuit Court ... jurisdiction to review legal challenges to the adoption of text amendments via judicial review actions." *Anderson House*, 402 Md. 689, 705-06, 939 A.2d 116, 126; *see* Baltimore City Code, Zoning Article, §§ 17–301–17–305. Thus, absent a "special form of remedy," Circuit Court review of Petitioners' challenges to Ordinance 03–514 would be considered properly only in the declaratory/injunction action. Maryland Code, Courts and Judicial Proceedings Article, § 3–409.

For these reasons, Petitioners must pursue via their declaratory/injunction action their grievances with regard to Ordinance 03–514, the zoning ordinance text amendment to the Baltimore City Zoning Article, but should be allowed to amend that action to frame in a petition for judicial review their claims as to Ordinance 03–515 granting the specific conditional use to the Arena.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPIN-**

---

**20.** In light of the dual jurisdictional modalities pursued by Anderson House to raise its legal challenges, it was unnecessary for us to decide conclusively the question of whether the City of Rockville properly could provide for judicial review of a comprehensive zoning map amendment under Maryland Code, Article 66B, § 4.08(f). *Anderson House*, 402 Md. 689, 711-12, 939 A.2d 116, 129-30.

ION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.